Argued January 27; affirmed February 14; rehearing
denied April 25, 1933

# LAIRD *v.* FRICK

(18 P. (2d) 1029)

*John D. Goss,* of Marshfield (Goss, Murphy & Skipworth, of Marshfield, on the brief) for appellant.

*Chris Boesen,* of Marshfield (Claud H. Giles and J. W. McInturff, both of Marshfield, on the brief) for respondent.

CAMPBELL, J. Plaintiff had verdict and judgment against defendant in the sum of $7,093.90.

It would appear that plaintiff and one W. E. Best were the sole owners in equal shares of the stock of a corporation known as the Best-Laird Company. This company entered into an agreement with defendant, who was a capitalist, whereby he would buy certain tracts of timber land in Curry county then sell the Port Orford cedar timber on said lands to the Best-Laird Company, who would log the tract and from the proceeds from the sale of the logs, after paying the actual cost of logging, pay defendant the price he paid for the tract with interest at the rate of 7 per cent per annum and all taxes paid by him from the date of purchase, together with one-third of the profits from the enterprise.

Sometime after they began operations under the above agreement, a dispute arose between the Best-Laird Company and the defendant, which resulted in a suit being filed by defendant against the Best-Laird

Company for an injunction, and accounting and damages on account of alleged mismanagement of the business.

The record does not disclose what the final determination of the said suit was; however, the record does show that before the matters at issue therein were submitted to the court for determination the parties made a settlement.

Plaintiff, herein, bought all the stock and all the claims and interest that W. E. Best had in the corporation, for the sum of $16,500. This stock was paid for by funds claimed to be borrowed of the Best-Laird Company and was bought for the defendant herein. Sometime thereafter, the stock of the corporation was distributed in the following proportions: 40 per cent to the plaintiff, 40 per cent to the defendant, and 20 per cent to F. J. Solinsky. It appears that the stock was issued to Solinsky for his assistance in bringing about the settlement between the parties. Thereafter, the corporation was sold to other parties and a distribution made of the proceeds. There is practically no dispute in the facts up to this point.

Plaintiff contends that he borrowed the $16,500, with which the stock of W. E. Best was paid for, from the corporation and that he was to repay the corporation, and that he paid the money for the use and benefit of the defendant. It is admitted that defendant got the use and benefit of that sum of money. Plaintiff further contends that the defendant was to repay him the full amount and that he (plaintiff) was to repay the corporation.

It is contended by defendant that the corporation bought the stock of W. E. Best for him and that it was part of the settlement of the suit which he had begun.

The cause was tried to a jury and at the close of plaintiff's case defendant moved for a non-suit on the grounds that there was no evidence to sustain the allegations of the complaint. The court overruled the motion. Defendant thereupon introduced his evidence and the cause was submited to the jury with the result in favor of plaintiff. Defendant appeals.

He sets up seven assignments of error, as follows:

No. 1. The court erred in overruling defendant's motion for a non-suit.

No. 2. To recover under the pleadings, the plaintiff must prove that he himself furnished the $16,500 that was paid out.

No. 3. If the plaintiff had any money coming from the Best-Laird Company by reason of the settlement, all of the stock of the corporation having been sold with a guarantee as to claims as to former stockholders, his cause would have been against the other stockholders as individuals; that is, both Mr. Frick and Mr. Solinsky.

No. 4. This assignment relates to the refusal of the court to admit certain letters in evidence.

No. 5. This assignment relates to the court submitting to the jury a form of verdict in which the amount of the verdict was filled in.

Nos. 6 and 7. These assignments relate to the court's refusal to give certain instructions requested by defendant.

1, 2, 3. The real question at issue is, was there any competent evidence to sustain the allegations of the complaint?

Mr. Laird testified, in effect, that at the time they were endeavoring to settle the former suit he talked with Mr. Frick who seemed to be very bitter towards

Mr. Best. Laird suggested to Mr. Frick, "Well, why don't you buy out Mr. Best?" He advised Mr. Frick that Mr. Best could probably be bought out for $15,000 and that would be a reasonable price. Mr. Frick desired to consult with Mr. Solinsky, who seemed to approve of the proposition. Mr. Frick states that he was short of funds and did not have the money to pay for Mr. Best's stock and Laird suggested that he, Laird, would borrow the money from the corporation and pay Mr. Best for the stock on behalf of Mr. Frick. It developed that Mr. Best would not sell for less than $16,500.

"Q. At the time you took out this $16,500 out of the funds of the Best-Laird Company, did you have any agreement with Mr. Frick as to whether or not he would repay the amount to you?

A. That was the agreement between us, that he was to pay the money back to me later on.

Q. Were you buying Mr. Best's stock for yourself?

A. I was buying it for Mr. Frick.

　　　*　　*　　*　　*　　*

Q. Now how was this $16,500 which you drew out of the Best-Laird Company to be repaid to the company according to the agreement with Mr. Frick?

A. Mr. Frick was to pay it back to me and I was to pay it back to the company.

　　　*　　*　　*　　*　　*

Q. Now how was this money to get back into the corporation according to the agreement with Mr. Frick?

A. Mr. Frick was to repay it to me and I was to pay it back into the corporation".

If this story was true, then Mr. Frick was liable to plaintiff for the amount paid Mr. Best and plaintiff was liable to the corporation for the amount borrowed.

On the other hand, Mr. Frick testified that in the settlement of the former suit the Best-Laird Com-

pany was to buy 50 per cent of its own stock and turn it over to him. Just what the consideration was to be for that purchase does not appear in evidence, other than it was for the settlement of the case. That was a question for the jury to determine. There was some competent evidence in support of the allegations of the complaint as well as in support of the answer. This being so, this court will not now weigh the testimony and decide on which side it preponderates. *Saylor v. Enterprise Electric Company*, 110 Or. 231 (222 P. 304, 223 P. 725).

▄ It is immaterial what you name a cause of action, distinctions being abolished by our code. Oregon Code 1930, § 1-101.

▄ If the plaintiff can establish a contract such as he alleged in his complaint, he is entitled to recover regardless of where he got the money to advance, so long as it was not defendant's money. *Treece State Bank v. Wade*, 283 S. W. 714; *Skeen v. Skeen*, 76 Utah 32 (287 P. 320) ; 41 C. J. 21, § 21. The fact that he is claiming only 40 per cent of the amount advanced is not material. It would be useless to bring action for the whole $16,500, and then repay the full amount to the corporation and then have the corporation divide it up forty, forty, twenty.

Reduced to its simplest terms, the plaintiff claims that he paid for the use and benefit of defendant $16,500 on defendant's request, and that defendant promised to repay him. This money he borrowed from a corporation that he must repay. Defendant and F. J. Solinsky became entitled to $9,900 of the money that was to go into the corporation and plaintiff simply credited that amount on his claim.

Defendant had no interest in the Best-Laird Company until after the purchase of Mr. Best's stock. There is no contention that defendant is liable either to Mr. Best or the corporation.

■ 4. Defendant offered in evidence some letters written by plaintiff to Mr. Solinsky in which some of the affairs of the corporation were discussed but nothing said about the transaction set up in the complaint herein. These letters referred to certain logging operations and the cost thereof in certain places and what some one by the name of "Pink" had said. They were written in quite a friendly tone, as they referred to Mr. Solinsky as "Frank" and to defendant as "Walter" but were really quite immaterial to any question at issue in this case. It was not error to refuse their admission.

■ 5. A form of verdict was prepared by the plaintiff which the court submitted to the jury. This form had the amount of plaintiff's claim filled in. While this form is not always commendable, in the instant case, under the pleadings and the evidence, it was not prejudicial. If plaintiff was entitled to prevail, then he should have a verdict for the full amount, the sum not being in dispute.

6. Defendant requested the following instruction:

"If you find that the agreement actually entered into was as defendant claims it to have been, or was not as plaintiff claims it to have been, or that the parties did not really understand it alike, i. e., that one party thought they had agreed to one thing, and the other party thought they had agreed to another thing, in any of these cases, your verdict must be for the defendant".

Also the following:

"It is not incumbent upon the defendant to prove any particular state of facts—he has entered a general

denial in his answer, and unless the plaintiff establishes his case by a preponderance of the evidence your verdict should be for the defendant''.

The court, in covering this subject, instructed as follows:

''Now I have said that the question is what was the agreement. The plaintiff sues on an alleged contract. A contract, in general terms, is a promise or set of promises for which the law gives a remedy. It involves a manifest statement of mutual assent. People speak of the understanding of the parties. A contract is not to be construed according to any secret or any unreasonable understanding by one party of the promise of another party. Mutual assent and a meeting of the minds so called are necessary for a contract to have mutual assent which in law controls manifested mutual assent. As to words used in an agreement the law imputes to a party in an agreement the intention which properly corresponds to the reasonable meaning of the words used''.

This properly presented the question to the jury and it was not error to refuse to give the instructions in the exact words of the request. *Bank of California v. Portland Hide and Wool Company,* 131 Or. 123 (282 P. 99); *Rorvik v. N. P. Lumber Co.,* 99 Or. 58 (190 P. 331, 193 P. 163); *Riley v. Good,* ante p. 155 (18 P. (2d) 222).

7. Defendant also requested the following instruction:

''I instruct you as a matter of law that the Best-Laird Company in arriving at the net profits referred in the agreement of January 27, 1927 (being part of plaintiff's exhibit C), had no right to deduct from the gross amount received any salaries paid to Best and/or Laird, nor did said company have any right to deduct any part of the overhead or any commission or any

item except the sum of $51,000 mentioned in said agreement, plus interest and taxes, and plus actual costs in cutting and transporting the timber referred to in said agreement''.

 This was presenting a matter to the jury that was not in issue in the case. The plaintiff was only entitled to recover, on the proof of his alleged contract, any profits that were involved prior thereto was not a question that was raised under the issues of this case.

The judgment of the circuit court will be affirmed.

It is so ordered.

RAND, C. J., BEAN and BAILEY, JJ., concur.