Argued and submitted March 11, Court of Appeals affirmed in part and reversed in part, circuit court judgment reinstated May 20, 1986

## PATTON,
*Petitioner on review/*
*Respondent on review,*

*v.*

## J. C. PENNEY CO., INC. et al,
*Respondents on review/*
*Petitioners on review.*

(CC 83-11-221; CA A33254; SC S32302, SC S32300)

719 P2d 854

James J. Roberson, Lake Oswego, argued the cause for

petitioner/respondent on review Patton, and filed the petition and a reply to the *amicus curiae* brief.

Jeffrey M. Batchelor, of Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, argued the cause for respondents/petitioners on review J. C. Penney Co. et al. With him on the petition was Richard F. Liebman, Portland.

Susan P. Graber and Eileen Drake, of Stoel, Rives, Boley, Fraser & Wyse, Portland, filed a brief *amicus curiae* on behalf of Tektronix, Inc.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

JONES, J.

Linde, J., filed an opinion concurring in part and dissenting in part, joined by Lent, J.

**JONES, J.**

David Patton filed suit against J. C. Penney Co. and two supervisors, McKay and Chapin, alleging both "wrongful discharge" from employment and "outrageous conduct."[1] The trial court granted defendants' motion to dismiss for failure to state a claim on both counts.

Plaintiff then appealed to the Court of Appeals. That court affirmed the dismissal of the wrongful discharge claim, but reversed on the intentional infliction of severe emotional distress claim, sending it back for trial in the circuit court. 75 Or App 638, 707 P2d 1256 (1985). In addressing the wrongful discharge claim, the Court of Appeals acknowledged that there are exceptions to the general rule that an employer may discharge an employe at any time and for any reason, but the court found that plaintiff's claim did not qualify under any exception to the general rule.

On the intentional infliction of severe emotional distress claim, the Court of Appeals concluded that a jury could find from the facts pled that "defendants exceeded the bounds of social toleration when they terminated plaintiff's employment, and that they acted with a reckless disregard of the predictable effects of their actions on plaintiff." We conclude that plaintiff has no claim under either theory.

This case comes to us on the pleadings, which allege the following facts:

Defendant J. C. Penney Co. hired plaintiff in 1969. Plaintiff worked in Eugene until 1980 when he was transferred to Portland where he worked as a merchandising manager. In 1981, the store manager, defendant McKay, told plaintiff to break off a social relationship with a female co-employe. Plaintiff responded by telling McKay that he did not

---

[1] We have stated before that the label of "outrageous conduct" does not help our analysis. In *Hall v. The May Dept. Stores,* 292 Or 131, 135-36, 637 P2d 126 (1981), this court stated:

"In attempting to articulate what separates actionable conduct from the ordinary run of crudely aggressive, overbearing, or ill-tempered behavior, Prosser and the Restatement turned to adjectives like 'outrageous' and 'extreme.' These are not words of art; other words or phrases could serve as well. All are designed only to express the outer end of some gradation or scale of impropriety and social disapproval. No more can be conveyed by defining one epithet by another. * * *"

socialize with the co-employe at work and that he intended to continue seeing her on his own time. Apparently, the social relationship did not interfere with plaintiff's performance at work, for during this time he earned several awards for "Merchant of the Month" and one for "Merchant of the Year."

McKay later, while interrogating other employes about whether plaintiff had broken off the relationship, made statements to the effect that if plaintiff wanted to keep working he had to discontinue the relationship. Although no written or unwritten policy, rule or regulation proscribed socializing between employes, other employes told plaintiff that McKay disfavored plaintiff's fraternization with the female co-employe. Nevertheless, plaintiff continued seeing the co-employe. When McKay warned plaintiff in late 1981 that his job performance was unsatisfactory and that he would be fired if there was no improvement, plaintiff asked for a transfer to another department. McKay denied the request. In February 1982, McKay terminated plaintiff's employment for unsatisfactory job performance. The district manager, defendant Chapin, approved the termination.

## WRONGFUL DISCHARGE

■ Generally an employer may discharge an employe at any time and for any reason, absent a contractual, statutory or constitutional requirement. *Simpson v. Western Graphics,* 293 Or 96, 99, 643 P2d 1276 (1982); *Nees v. Hocks,* 272 Or 210, 216, 536 P2d 512 (1975). Termination of employment ordinarily does not create a tortious cause of action. *Nees,* 272 Or at 216. We have set forth exceptions to the general rule which are discussed in a series of cases.

In *Nees v. Hocks, supra,* the employer fired the employe for disregarding its wishes that the employe ask to be excused from jury duty. In fact, the employe told the court clerk that she would like to serve on jury duty. This court held that the jury system and jury duty are important American institutions and citizen obligations: "If an employer were permitted with impunity to discharge an employe for fulfilling her obligation to jury duty, the jury system would be adversely affected. The will of the community would be thwarted." 272 Or at 219. Defendant could thus be held liable for discharging plaintiff for serving on the jury.

In *Delaney v. Taco Time Int'l,* 297 Or 10, 681 P2d 114 (1984), this court held that an employer could be held liable for discharging an employe who refused to sign a false and potentially defamatory statement about a former co-employe. The court found that Article I, section 10, of the Oregon Constitution, recognizes an obligation on members of society not to defame others. Therefore, the court said that the defendant could not discharge plaintiff for fulfilling a societal obligation. 297 Or at 17.

A wrongful discharge claim may also exist when an employe is fired for pursuing private statutory rights directly relating to the employe's status or role as an employe. *Holien v. Sears, Roebuck and Co.,* 298 Or 76, 90, 689 P2d 1292 (1984). In *Holien,* the court found plaintiff's allegations that she was fired for resisting sexual harassment sufficient to state a claim because on-the-job sexual harassment by supervisors is forbidden by state and federal law. *See also Brown v. Transcon Lines,* 284 Or 597, 588 P2d 1087 (1978) (employe who alleged that he had been discharged for filing workers' compensation claim allowed to bring a tort claim because statutes forbidding discrimination against employe who files workers' compensation claim constitute legislative recognition of an important public policy and the discharge frustrated that substantial public interest).

We have rejected wrongful discharge claims under a third category where the law provides other remedies than a common law remedy for wrongful discharge. For example, in *Walsh v. Consolidated Freightways,* 278 Or 347, 563 P2d 1205 (1977), this court found that an additional tort remedy for wrongful discharge was unnecessary when an employe was discharged for complaining about a safety violation for which there were statutory remedies.

Plaintiff does not allege that his discharge was for pursuing statutory rights related to his status as an employe. Nor does plaintiff allege interference with an interest of public importance equal or analogous to serving on a jury or avoiding false, defamatory remarks. Plaintiff claims that certain of his "fundamental, inalienable human rights were compromised, put on the auction block, and made the subject of an illicit barter in that he was forced to forego these rights or to purchase them with his job." He claims that the employer

invaded his personal right of privacy and that the employer could not fire him for pursuing a private right. But these claims blur "rights" against governmental infringement with "rights" against a private employer. Plaintiff's acts were voluntary and no state or federal law mandates or prohibits discrimination on that account. It may seem harsh that an employer can fire an employe because of dislike of the employe's personal lifestyle, but because the plaintiff cannot show that the actions fit under an exception to the general rule, plaintiff is subject to the traditional doctrine of "fire at will."

The Court of Appeals is affirmed on this issue.

## INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS

■  Count II of plaintiff's allegations demonstrates that he is attempting to plead the emerging tort of intentional infliction of severe emotional distress, which consists of several elements. First, ordinarily a plaintiff must allege that a defendant intended to inflict severe mental or emotional distress. It is not enough that he intentionally acted in a way that causes such distress. Second, a defendant's act must in fact cause a plaintiff severe mental or emotional distress. Third, a defendant's actions must consist of "some extraordinary transgression of the bounds of socially tolerable conduct" or the actions must exceed "any reasonable limit of social toleration." *Hall v. The May Dept. Stores,* 292 Or 131, 135, 137, 637 P2d 126 (1981).

Summarizing plaintiff's pleadings, we observe that plaintiff alleged:

(1)  Defendants intended to inflict severe emotional distress on plaintiff.

(2)  The acts did cause severe emotional distress.

(3)  The impermissible act that constituted "extraordinary transgression of the bounds of socially tolerable conduct" was McKay's dismissal of the plaintiff because he asserted his private right to associate with a female co-employe.

Thus, the pleadings are technically sufficient if the underlying act exceeds the bounds of socially tolerable conduct.

Even if defendant fired plaintiff for refusing to break

off a relationship with a co-employe and this was intended to, and in fact did, inflict severe emotional distress, the act of firing is not beyond the bounds of socially acceptable behavior. We have just held that the act of discharging the plaintiff because his supervisor did not approve of plaintiff's private relationship with a co-employe is not actionable on a theory of wrongful discharge.

Of course, the fact that an act is lawful does not mean that it is not actionable if the legal right is improperly manipulated or abused. But here, the employer had the right to discharge the employe at will; he warned the employe that he would be discharged if he pursued a private right and he did in fact discharge him. This may be bad conduct or offensive conduct, but it is not an "extraordinary transgression of the bounds of socially tolerable" behavior. Private employers who engage in the free enterprise system and risk their own capital can fire employes at any time and at will. Many improvements have been made to the employer-employe relationship through tenure, statutes, contracts and the like, but in most respects employment remains an arms length, "take it or leave it" relationship.

The key focus in intentional infliction of severe emotional distress cases is not on the result, but on the purpose and the means used to achieve it. In *Brewer v. Erwin,* 287 Or 435, 457, 600 P2d 398 (1979), for example, this court held that:

"[The] essence [of the tort] is that the infliction of actual mental suffering on the plaintiff is the deliberate purpose of defendant's conduct, although that conduct may of course have an ulterior objective * * *. The additional requirement that defendant's means of inflicting the injury must have been extraordinary is explained as necessary, first, to distinguish actionable conduct from the insults, ill temper, and offensive jokes that persons are expected to endure under contemporary standards of behavior, and second, to provide a setting of objective reality for a claim of harm that otherwise rests only on evidence of the plaintiff's subjective reaction divorced from physiological or other tangible injury. * * *" (Citations omitted.)

The intentional infliction of severe emotional distress claim in *Brewer* was based on defendant's effort to frighten or bully plaintiff out of her apartment by particularly obnoxious

means: disconnecting utilities, using physical violence and threats of violence, and demolishing the building under her feet. Similarly, in *Turman v. Central Billing Bureau, Inc.*, 279 Or 443, 568 P2d 1382 (1977), a debt collector purposely employed abusive and threatening telephone calls to shame and frighten the debtor, and this conduct was particularly unjustifiable after the collection agency knew that the debtor had arranged a settlement directly with the creditor. Again, in *Hall v. The May Dept. Stores, supra*, the defendant deliberately used psychic distress in an attempt to coerce an employe into admitting a crime, in the face of only "scanty evidence" of wrongdoing.[2]

In the case at bar, the alleged manner in which plaintiff was discharged does not reach the level of intolerable conduct described in the aforementioned cases. We agree with the Court of Appeals dissent that McKay's alleged behavior was "rude, boorish, tyrannical, churlish and mean—and those are its best points," but that it was not "outrageous in the extreme," and that the allegations do not support plaintiff's claim for intentional infliction of severe emotional distress. 75 Or App at 650.

The Court of Appeals is affirmed as to the wrongful discharge claim and reversed as to the intentional infliction of severe emotional harm claim.

**LINDE, J.,** concurring in part and dissenting in part.

I agree that plaintiff has not pleaded a common-law tort claim for wrongful discharge, for the reasons stated by the Court. The established American doctrine of discharge at will for noneconomic, nonperformance-related reasons can be criticized, but as long as Oregon law treats the employment relationship, in absence of a contrary agreement, as terminable at will, a discharge as such is not a tort because a court or a jury disapproves of the employer's reason. A reason is impermissible if it contravenes some other law, or if the employee is discharged for complying with a public duty or for exercising a specifically job-related right. *Holien v. Sears, Roebuck and Co.,*

---

[2] The earlier case of *Rockhill v. Pollard,* 259 Or 54, 485 P2d 28 (1971), differs in that the court required a lesser degree of purposive abuse in the relation of a physician toward persons seeking his professional aid.

298 Or 76, 689 P2d 1292 (1984); *Delaney v. Taco Time Int'l,* 297 Or 10, 681 P2d 114 (1984). These limits of the tort of wrongful discharge cannot be circumvented by raising the level of indignation at the employer's reason to "outrage."

It does not follow that an employee's discharge cannot be an element in another tort. The gist of tortious discharge is an economic harm, the loss of the job, although damages may extend to consequential injuries. By definition, the tort is that of an employer. Intentional infliction of severe psychic or emotional distress is a different tort. As that lengthy name given it by Dean Prosser, *see* Prosser, *Intentional Infliction of Mental Suffering: A New Tort?,* 37 Mich L Rev 874 (1939), and the Second Restatement of Torts, section 46, means to keep in view, it requires both an aim to inflict severe psychic harm and its actual accomplishment by socially intolerable methods. If a person pursuing some personal vendetta takes extraordinary steps to have another discharged in order to cause the other severe psychic distress, a court or jury might find the particular conduct to exceed socially tolerable bounds, even though the employer has committed no tort.

The employer in the present case is J. C. Penney Co., Inc., a nationwide retailer whose shares are widely held. The complaint names the company as a defendant along with its local store manager, McKay, and its district manager, Chapin. The complaint does not allege that these defendants, in intentionally inflicting psychic or emotional distress on plaintiff, did so in pursuit of any business purpose of the J. C. Penney company.[1] The difference between this case and *Hall v. The May Dept. Stores,* 292 Or 131, 637 P2d 126 (1981), in which a corporation was held liable for its investigator's use of threats and accusations as a tactic to bully an employee into admitting theft, is that there the investigator pursued an objective of his employer. The present complaint does not allege that the J. C. Penney company objected to plaintiff's social activities and wished to harass him into dropping them;

---

[1]For the limits on *respondeat superior* for intentional torts committed by an employee in the course of his employment but for personal motives rather than a purpose of his employer, *see* Prosser & Keeton, The Law of Torts 505-08, § 70 (5th ed 1984); Brill, *The Liability of an Employer for the Wilful Torts of his Servants,* 45 Chi-Kent L Rev 1 (1968); Mechem, Agency 1498-99 (2d ed 1914). *See also, Tauscher v. Doernbecher Mfg. Co.,* 153 Or 152, 56 P2d 318 (1936).

on the contrary, it alleges that the company had no such policy.

The factual allegations, however, seem sufficient to plead another tort claim against McKay, a claim for tortious interference with plaintiff's employment contract with J. C. Penney Co., Inc. Again, the gist of that claim, as of plaintiff's attempted claim of tortious discharge, is the economic harm of the lost job, though there may be consequential injuries. *Cf. Mooney v. Johnson Cattle,* 291 Or 709, 634 P2d 1333 (1981). Plaintiff did not argue this legal theory, perhaps because McKay was the manager who terminated plaintiff's employment. But plaintiff's employer was the J. C. Penney company. If McKay were an outsider who induced the company to break off plaintiff's further employment by wrongful means or for a wrongful purpose, he would be liable, and there seems to be no reason why he could not be liable if he misused his power as store manager for his own rather than the company's purposes.[2] *See Lewis v. Oregon Beauty Supply Co.,* 77 Or App 663, 714 P2d 618 (1986), *rev allowed* May 21, 1986.

The complaint alleges, in effect, that McKay directed plaintiff to cease a social relationship with a co-worker although it contravened no rule or policy of the employer, that plaintiff's refusal to do so made McKay "angry and resentful," that ultimately McKay terminated plaintiff's employment by J. C. Penney Co., Inc., on false grounds of "unsatisfactory job performance," and that he did so "with malice and in retaliation for Plaintiff's assertion of his valued rights and were intended to inflict upon Plaintiff severe emotional distress." To prove a claim of tortious interference, plaintiff must show the required wrongful motive or wrongful means; thereafter, it is defendant's burden to show a privilege or other defense. *Straube v. Larson,* 287 Or 357, 361, 600 P2d 371 (1979), *Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 209-10, 582 P2d 1365 (1978).

Here, the somewhat indefinite charge that McKay

---

[2]*Restatement, Second, Agency* § 248, *comment c* at 548 (1958), states:

"A master is not liable in tort for the act of a servant who improperly causes the master to break a contract with third persons or with one of his own servants. The master is of course liable for a breach of contract but not, even if he were to approve the agent's bad motive, for punitive damages."

acted from personal "malice" toward plaintiff is not further spelled out, and plaintiff may not be able to prove it. But the case is before us on a motion to dismiss the complaint, and to survive such a motion the complaint only needs to allege "ultimate facts constituting a claim for relief" and a "demand of the relief which the party claims." ORCP 18. The legal label for a theory of liability is not a "fact" that needs to be alleged in the complaint itself. When the facts alleged make out a claim for tort damages, the complaint cannot be dismissed for "failure to state ultimate facts sufficient to constitute a claim," ORCP 21A, whatever consequence a failure to specify the exact legal basis of the claim might have at later stages of the litigation.[3] If plaintiff in fact can show that McKay was motivated by personal malice and deliberately caused plaintiff both economic and psychic harm without any justification or privilege, plaintiff would have a claim against McKay under either theory, though not against J. C. Penney Co., Inc.

Against Chapin, the district manager, the complaint alleges only that he had discretionary authority to reverse plaintiff's dismissal by McKay, and that his "actions" (or failure to act) along with McKay's "were done with malice and in retaliation" for plaintiff's assertion of his rights. An allegation of mere refusal to overrule the store manager does not allege a form of intolerable conduct, and I concur with the Court in dismissing that claim against Chapin. If plaintiff can prove the malicious personal motive that he alleges against Chapin, however, those allegations make out an interference claim also against Chapin, unless he shows privilege or another defense.

I therefore concur that the complaint should be dismissed as to all defendants on the claim based on tortious discharge and on all theories as to J. C. Penney Co., Inc., but I

---

[3] *See generally, Davis v. Tyee Industries, Inc.,* 295 Or 467, 473-79, 668 P2d 1186 (1983). "It is immaterial what you name a cause of action, distinctions being abolished by our Code 1930, § 1-101." *Laird v. Frick,* 142 Or 639, 644, 18 P2d 1029 (1933).

"In proceeding to discover whether the complaint sufficiently pleads any theory rendering it invulnerable to respondents' demurrer, we will also be governed by a further rule well stated in 1 Bancroft, Code Pleading, 366, § 220, as follows: '* * * [the court] will sustain the complaint if it states a cause of action on any theory, even if it is not the one the plaintiff intended * * *.'"

*Windle, Adm'x et al v. Flinn et al,* 196 Or 654, 664, 251 P2d 136 (1952). *See also* ORCP 2.

would remand the case to the circuit court for further proceedings on the tort theories available to plaintiff on the ultimate facts alleged against McKay and Chapin.

Lent, J., joins in this separate opinion.