Gary Arden SELLICK, Plaintiff,

v.

DENNY'S INCORPORATED,
a California corporation,
Defendant.

Civ. No. 94–991–JO.

United States District Court,
D. Oregon.

Jan. 17, 1995.

Marybeth Wosko, Portland, OR, for plaintiff.

Calvin L. Keith, Robert L. Aldisert, Perkins Coie, Portland, OR, for defendant.

## OPINION AND ORDER

ROBERT E. JONES, Judge:

Plaintiff is a severely obese man who seeks to recover a sizeable sum of damages ($100,-000 in compensatory and $1.2 million in punitives) for Defendant's alleged disability discrimination and intentional infliction of emotional distress. This matter is before the Court on Defendant's Motion for Summary Judgment (# 5–1).

## UNDISPUTED FACTS

Plaintiff suffers from "morbid obesity." At the time of the events which gave rise to this law suit, Plaintiff weighed over 400 pounds.

Around May 18, 1994, Plaintiff visited Defendant Denny's for a meal. He was seated in a booth where he dined for 30–45 minutes. When he finished eating, Plaintiff discovered that he became wedged in the booth and had to struggle his way out. Before leaving the restaurant, Plaintiff explained to the night manager that he experienced difficulty removing his body from the booth and that the restaurant should accommodate larger people by providing chairs without arms.

Three weeks later, on June 8, 1994, Plaintiff returned to Defendant Denny's. The hostess escorted Plaintiff to a booth, but he refused to sit down when he determined that he was too large for it. Plaintiff requested to be seated in either a larger booth or a chair without arms. At that moment, a Denny's waitress pointed at Plaintiff and shouted, "you can't sit him in that aisle, you can't sit him in that aisle."[1] The restaurant was approximately 50–60% full with patrons.

After the waitress made that comment, the hostess directed Plaintiff to another booth where he again refused to sit because he was too large. Finally, the hostess provided a chair with arms but Plaintiff determined that he could not fit in the chair and requested a chair without arms. However, the hostess stated that she did not have such a chair. Thereafter, Plaintiff spoke to the manager who explained that she did not have an armless chair and the chair with arms was "the best she could do." Def.'s Ex. A, Tr. 45. Plaintiff admits that the hostess and the manager were polite. Id.

After his discussion with the manager, Plaintiff attempted to apologize to a Denny's waitress but she ignored him with a grin on her face. Subsequently, Plaintiff left the restaurant and has not returned since. According to Mr. Casey, general manager of Defen-

---

1. Denny's policy prohibits the placing of chairs in designated aisles to allow free passage of persons in the event of a fire.

dant Denny's, at some time after the events described above, Denny's purchased an armless chair for Plaintiff and other customers who prefer such chairs. Casey Decla. at 1–2.

On July 20, 1994, Plaintiff instituted the present action in Oregon state court. Plaintiff asserts two claims for relief:

(1) disability discrimination because Defendant is a place of public accommodation which failed to provide reasonable accommodation (*i.e.* an armless chair, a bench, or wide-armed chair) for Plaintiff's physical impairment; and,

2) intentional infliction of emotional distress because Defendant failed to provide a useable chair and Defendant's waitress pointed at Plaintiff and shouted, "you can't seat him in that aisle," thus causing Plaintiff severe humiliation.

On August 15, 1994, Defendant removed the action to this Court based on diversity jurisdiction. Thereafter, on December 13, 1994, Defendant filed this Motion for Summary Judgment.

After considering the arguments presented, Defendant's Motion for Summary Judgment (# 5–1) is GRANTED.

#### STANDARD

■ Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

■ The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *Id.* at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

#### DISCUSSION

#### I. Claim For Intentional Infliction of Emotional Distress

Defendant explains that Oregon recognizes a claim for intentional infliction of emotional distress where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency * * *." *Rockhill v. Pollard,* 259 Or. 54, 59–60, 485 P.2d 28 (1971) (citation omitted). However, Defendant argues that as a matter of law the undisputed facts show that Defendant's waitress' conduct was not sufficiently outrageous to warrant a claim for intentional infliction of emotional distress.

In response, Plaintiff contends that a special relationship exists between Plaintiff and Defendant which may heighten the outrageousness of the conduct. Plaintiff further argues that the offensiveness of the conduct is a question of fact which should not be addressed at this stage of the litigation because a jury might reasonably infer that Defendant's statement "exceeded the bounds of social toleration in the context of the special relationship." Lastly, Plaintiff argues that his size and appearance bear on the issue of outrageousness because he is very self-conscious and thus particularly susceptible to such embarrassing remarks.[2]

The Oregon Supreme Court set forth the following elements of a claim for intentional infliction of emotional distress:

(1) the defendant intended to inflict severe emotional distress on the plaintiff,

(2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and

---

2. As illustration, Plaintiff writes that kicking a cane from an able-bodied person may not be outrageous, but kicking a cane from a blind man is far more atrocious.

(3) the defendant's acts constitute an extraordinary transgression of the bounds of socially tolerable conduct.

*Mandani v. Kendall Ford, Inc.*, 312 Or. 198, 203, 818 P.2d 930 (1991) (citation omitted) (court dismissed plaintiff's claim for intentional infliction for emotional distress where employer fired plaintiff for refusing to pull down his pants at employer's request).

Plaintiff correctly argues that certain types of relationships between the defendant and the victim afford the victim greater protection. For example, in *Hall v. The May Dept. Stores*, 292 Or. 131, 637 P.2d 126 (1981), the Oregon Supreme Court recognized that employer/employee and doctor/patient relationships between the defendant and the victim, may entitle the victim to "a greater degree of protection from insult and outrage than if he were a stranger to defendants." *Id.* at 138, 637 P.2d 126 (citation omitted) (court held that a jury could find that severe interrogation by an employer who accuses an employee of theft, exceeds the outer bounds of socially tolerable employer practices, and thus permit a claim for intentional infliction of emotional distress).

Nevertheless, even if a relationship exists which "imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock," the court must still determine whether the actions "qualify as extraordinary conduct which a reasonable jury could find beyond the farthest reaches of socially tolerable behavior * * *." *Id.* at 137, 637 P.2d 126.

█ In considering whether the defendant's acts were an extraordinary transgression of the bounds of socially tolerable behavior, the key focus is "on the purpose and the means used to achieve it." *Patton v. J.C. Penney Co.*, 301 Or. 117, 123, 719 P.2d 854 (1986) (court dismissed employee's complaint alleging that employer intentionally inflicted emotional distress by discharging the employee because he was socializing with a coworker). The conduct must be deliberate and the means of inflicting the harm must be extraordinary:

'[t]he additional requirement that defendant's means of inflicting the injury must have been extraordinary is explained as necessary, first, to distinguish actionable conduct from insults, ill temper, and offensive jokes that persons are expected to endure * * * and second, to provide a setting of objective reality for a claim of harm that otherwise rests only on evidence of the plaintiff's subjective reaction divorced from physiological or other tangible injury.'

*Id.* at 123, 719 P.2d 854 (quoting *Brewer v. Erwin*, 287 Or. 435, 457, 600 P.2d 398 (1979)). "The tort does not provide recovery for the kind of temporary annoyance or injured feelings that result from friction and rudeness among people in day-to-day life." *Shay v. Paulson*, 131 Or.App. 270, 884 P.2d 870 (1994) (court dismissed complaint alleging that defendant intentionally inflicted emotional distress by forging plaintiff's name on magazine order forms).

█ In this case, I find that no fiduciary or any other special relationship exists between Plaintiff and Defendant; Plaintiff is merely a prospective customer in an arms-length transaction.[3] The undisputed facts are the following:

(1) Plaintiff entered Defendant Denny's to dine;

(2) Plaintiff decided that there was no seat large enough for his body;

(3) when the hostess suggested that Plaintiff be seated in a chair in the aisle, Defendant's waitress pointed at Defendant and shouted, "you can't sit him in that aisle, you can't sit him in that aisle;" and

(4) when Plaintiff spoke to the waitress, she ignored him and grinned.

Based on these facts, I conclude that Defendant's conduct does not constitute an "extraordinary transgression of the bound of socially tolerable conduct." At worst, Defendant's conduct may have been "rude, boorish, tyrannical, churlish, and mean," but it was

---

**3.** Furthermore, other than mere assertions, Plaintiff provides no support for the existence of a special relationship.

not "outrageous in the extreme." [4] *Patton* at 124, 719 P.2d 854. Accepting all of plaintiff's allegations as true, the alleged conduct was not even close to any of the above.

For these reasons, Defendant's Motion for Summary Judgment on Plaintiff's Second Claim is GRANTED.

## II. Claim For Disability Discrimination

Defendant admits that Oregon law prohibits discriminating against disabled persons; however, it argues that Oregon statutes do not require places of public accommodation to provide reasonable accommodation for disabled persons. Furthermore, Defendant explains that it offered seating to Plaintiff in all available chairs and booths, but Plaintiff refused all of them. Therefore, Defendant did not discriminate against Plaintiff but rather treated him like every other customer.

In the alternative, Defendant argues that they attempted to accommodate Plaintiff by purchasing an armless chair, but Plaintiff never returned to the restaurant. Therefore, Plaintiff failed to give Defendant a reasonable amount of time to accommodate him before filing this law suit. Lastly, Defendant contends that it could not have known that Plaintiff was disabled, as defined in ORS 659.400(1), because obesity does not necessarily result in a "physical or mental impairment which substantially limits one or more major life activities." [5]

In opposition, Plaintiff argues that Defendant discriminated against him because it could not seat him on account of his size, but Defendant seated other people. Therefore, Defendant made a "distinction, discrimination, or restriction" against Plaintiff based on his disability. Furthermore, Plaintiff explains that the absence of a "reasonable accommodation" requirement in the statute does not preclude finding an implied requirement for "reasonable accommodation." Lastly, Plaintiff asserts that summary judgment should be denied because a genuine issue of fact exists regarding whether Defendant's efforts to accommodate Plaintiff were reasonable and also whether Defendant knew that Plaintiff had a disability.

Oregon statutes prohibit practices which discriminate against disabled persons: [6]

> [i]t is an unlawful practice for any place of public accommodation, resort or amusement as defined in ORS 30.675,[7] or any person acting on behalf of such place, to make any distinction, discrimination, or restriction because a customer or patron is a disabled person.

ORS 659.425(4) (1993).

■ In this case, the undisputed facts reveal the following:

> (1) Plaintiff dined at Defendant's in a booth;
>
> (2) after consuming food for 30–45 minutes, Plaintiff had difficulty removing his body from the booth;
>
> (3) Plaintiff returned to dine at Defendant's three weeks later;
>
> (4) the hostess offered two booths and one armchair to Plaintiff, but he rejected all three seating accommodations;

These facts do not support Plaintiff's claim that Defendant treated Plaintiff differently because of his size, but rather demonstrate that (1) Defendant treated Plaintiff exactly as it treats all other customers and (2) Plaintiff chose not to sit in the seats which were offered, even though he dined in a booth three weeks earlier. Plaintiff provides no facts which suggest that Defendant foreclosed Plaintiff from eating at the restaurant as a result of his alleged disability of "morbid obesity."

---

**4.** Moreover, Plaintiff's alleged susceptibility to comments about his size is not sufficient to elevate Defendant's comments and actions to the level of extreme outrageous conduct.

**5.** ORS 659.400(1) defines "disabled person" as "a person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such impairment or is regarded as having such an impairment."

**6.** For the definition of "disabled person," see *supra* note 5.

**7.** Section 30.675 reads: "[a] place of public accommodation * * * means any place or service offering to the public accommodations, advantages, facilities or privileges whether in the nature of goods, services, lodgings, amusements, or otherwise."

Furthermore, ORS 659.425(4) does not mandate a "reasonable accommodation" requirement. The fact that ORS 659.425(1) requires employers to provide "reasonable accommodation" to disabled employees, shows that the legislature did not mistakenly omit a "reasonable accommodation" requirement from ORS 659.425(4) for public accommodations. Moreover, I refused to imply such a requirement where, as here, the statute is clear and unambiguous. "If the language of the statute is clear and unambiguous, judicial inquiry is complete and that language controls absent rare and exceptional circumstances." *In re Perroton,* 958 F.2d 889, 893 (9th Cir.1992).

Because I find that (1) Defendant did not discriminate against Plaintiff based on an alleged disability and (2) ORS 659.425(4) does not impose a "reasonable accommodation" requirement on Defendant, I need not address Defendant's remaining arguments in support of its motion for summary judgment.

For these reasons, Defendant's Motion for Summary Judgment of Plaintiff's First Claim is GRANTED.

### CONCLUSION

IT IS ORDERED that Defendant's Motion for Summary Judgment (# 5–1) is GRANTED, and Plaintiff's Complaint is accordingly DISMISSED.