Argued and submitted November 7, 2005, decision of Court of Appeals reversed; judgment of circuit court affirmed May 4, 2006

Robert WASHBURN,
*Respondent on Review,*

*v.*

COLUMBIA FOREST PRODUCTS, INC.,
*Petitioner on Review.*

(CC 0012-12516; CA A116664; SC S52254)

134 P3d 161

Scott G. Seidman, of Tonkon Torp LLP, Portland, argued the cause for petitioner on review. With him on the briefs was Lynda J. Hartzell.

Philip M. Lebenbaum, Portland, argued the cause and filed the briefs for respondent on review.

Bruce L. Campbell, Louis B. Livingston, Alyssa E. Tormala, and J. Michael Porter, of Miller Nash LLP, Portland, filed briefs on behalf of *amici curiae* WinCo Foods, Inc.; Freightliner LLC; and CertainTeed Corporation.

Gregory W. Byrne, Portland, filed a brief on behalf of *amici curiae* Associated Oregon Industries, Inc.; Oregon-Columbia Chapter of the Associated General Contractors of America; Associated Oregon Loggers, Inc.; and the National Federation of Independent Business.

Craig A. Crispin, Scott N. Hunt, and Theodore E. Wenk, Portland, filed a brief on behalf of *amici curiae* Oregon Trial Lawyers Association and Oregon Advocacy Center.

William N. Later, Portland, and Leland R. Berger, Portland, filed a brief on behalf of *amici curiae* American Civil Liberties Union Foundation of Oregon; National Organization for the Reform of Marijuana Laws; and Americans for Safe Access.

Before Carson,** Chief Justice, and Gillette, Durham, Riggs, De Muniz,*** Balmer, and Kistler, Justices.

DE MUNIZ, C. J.

Kistler, J., concurred and filed an opinion.

---

** Chief Justice when case was argued.

*** Chief Justice when decision was rendered.

**DE MUNIZ, C. J.**

This case involves the Oregon statutes that prohibit unlawful workplace discrimination against disabled persons, ORS 659A.112 to 659A.139. The issue before us is whether those provisions require an employer to make a disability-related accommodation for an employee who uses marijuana for medical purposes. Plaintiff, Robert Washburn, was an employee of Columbia Forest Products, Inc. (employer). He was also a medical marijuana recipient who regularly used the drug before going to bed to counteract leg spasms that otherwise would keep him awake. After plaintiff tested positive for marijuana use, employer terminated his employment. Plaintiff brought the present action against employer alleging a violation of state prohibitions against disability-related discrimination in the workplace. The trial court granted summary judgment for employer, holding, in part, that plaintiff was not "disabled" under the pertinent Oregon statutes. The Court of Appeals disagreed with that conclusion and held that employer's summary judgment motion should not have been granted. *Washburn v. Columbia Forest Products, Inc.*, 197 Or App 104, 104 P3d 609 (2005). We allowed employer's petition for review and now conclude that plaintiff is not "disabled" for the purposes of ORS 659A.112 to 659A.139. We therefore reverse the decision of the Court of Appeals and affirm the judgment of the trial court.

The following facts are undisputed. Plaintiff worked for employer as a millwright. Plaintiff suffers from muscle spasms in his legs that, left untreated, limit his ability to sleep. At one time, plaintiff took prescription medication that alleviated those spasms and helped him to rest, but plaintiff's doctor subsequently approved plaintiff's participation in Oregon's medical marijuana program. Plaintiff began smoking marijuana in the evening before going to bed, and, according to plaintiff, the marijuana was more effective in helping him sleep than the prescription drugs that he previously had taken.

Employer has a workplace drug policy that prohibits employees from reporting for work with a controlled substance in their system. The policy defines controlled substances as "all forms of narcotics, depressants, stimulants,

hallucinogens, and cannabis, whose sale, purchase, transfer, use or possession is prohibited by law." Violation of the drug policy subjects an employee to discipline up to, and including, termination. On several occasions, plaintiff provided employer with urine samples for drug tests. The particular type of drug tests that employer used could indicate only whether a person had used marijuana within the two-to-three week span preceding the test; the tests were incapable, however, of ascertaining whether a person was drug-impaired at the time of testing. The tests of plaintiff's urine subsequently detected the presence of marijuana metabolites in his system, indicating that plaintiff had used marijuana within the two-to-three week period prior to the test. Employer placed plaintiff on a leave of absence as a result. Shortly thereafter, plaintiff requested that employer accommodate his condition by allowing him to take a different drug test, one aimed only at determining drug impairment. Employer and plaintiff began negotiations regarding that request, but, after negotiations broke down, employer terminated plaintiff's employment.

Plaintiff initiated this civil action against employer, alleging that employer had failed to accommodate his disability under ORS 659A.112(2)(e).[1] Employer moved for summary judgment, asserting, in part, that plaintiff did not qualify as a disabled individual under Oregon law. The trial court granted that motion. In doing so, the trial court reasoned:

"[I]n this case[,] it's undisputed that there is medication * * * which is a mitigating measure, other than the marijuana, and which deals with the Plaintiff's problem; and, therefore, he is not disabled, in my view, under the act.

"* * * * *

---

[1] ORS 659A.112(2)(e) provides:

"An employer violates subsection (1) of this section if the employer does any of the following:

"* * * * *

"(e) The employer does not make reasonable accommodation to the known physical or mental limitations of an otherwise qualified disabled person who is a job applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer."

"[U]nless, you know, the person can choose what mitigating method the person wants to use to define him or herself as disabled, unless that's the law, which I don't believe it is, if there are mitigating factors and with mitigating factors the problem is alleviated, the person is not disabled under the act."

Plaintiff appealed, and the Court of Appeals reversed, holding that employer was not entitled to summary judgment as a matter of law. *Washburn*, 197 Or App 104. Among other things, the Court of Appeals disagreed with the trial court's reliance on mitigating measures to define *bona fide* disabilities under ORS 659A.112 to 659A.139. Although acknowledging that some parts of the law were statutorily required to be interpreted in step with federal disability decisions, the Court of Appeals nevertheless refused to do so with regard to ORS 659A.100 and its definition of "disabled person":

"As noted, ORS 659A.139 requires us, to the extent possible, to construe some portions of Oregon disability law consistently with the ADA. We have noted that ORS 659A.139 appears to be a 'lockstep' statute, designed to make state law a mirror image of federal law in many respects. The language used in both state and federal law to define 'disability' is quite similar. ORS 659A.100(1)(a) defines a disabled person as 'an individual who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment or is regarded as having such an impairment.' The federal definition of 'disability' is 'a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual[.]' Despite that similarity, however, ORS 659A.100 is not subject to the 'lockstep' statute because it is not within the range of statutes that the legislature identified in ORS 659A.139 that are to be construed, to the extent possible, in a manner consistent with federal constructions of parallel provisions."

*Washburn*, 197 Or App at 109-10 (internal citations omitted). As a result, although the United States Supreme Court had held that a person is not disabled under federal disability law if a mitigating measure will alleviate an otherwise substantial limitation to a major life activity, *see, e.g., Sutton v. United Airlines, Inc.*, 527 US 471, 119 S Ct 2139, 144 L Ed 2d

450 (1999) (so holding), the Court of Appeals concluded that the legislature did not intend to include the "mitigating measures" concept as part of the definition of a "disabled person" contained in ORS 659A.100. To do so, the court reasoned, would require it to contravene ORS 174.010[2] and to "add to the statute a requirement that the legislature did not place there." *Washburn*, 197 Or App at 111. As a result, the Court of Appeals held that ORS 659A.100(1)(a) defined the phrase "disabled person" without reference to mitigating measures.

On review, employer advances several different arguments, among them the proposition that there is no duty to accommodate an employee who is not substantially limited in a major life activity after a mitigating measure is taken into account. Plaintiff responds by asserting that the Court of Appeals correctly construed the relevant statutes regarding that issue and correctly concluded that plaintiff had a viable employment discrimination claim based on employer's refusal to accommodate plaintiff's alleged disability. Because we conclude that the question of plaintiff's status as a disabled person is dispositive in this case, we limit the scope of our inquiry to that issue.

■■ With regard to Oregon employment law, the general rule is that an employer may discharge an employee at any time and for any reason, absent a contractual, statutory, or constitutional requirement to the contrary. *Patton v. J. C. Penney Co.*, 301 Or 117, 120, 719 P2d 854 (1986). Among the statutes that make employment termination unlawful in certain instances are the discrimination provisions involving disabled workers.[3] ORS 659A.112 establishes that discrimination against disabled persons in the workplace is an unlawful employment practice:

---

[2] ORS 174.010 requires judges, in the course of construing statutes, simply to "ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]"

[3] Although ORS 659A.112 to 659A.139 are aimed primarily at proscribing unlawful discrimination against disabled workers on the job, some provisions of those statutes (together with other statutes, also delineate employer actions that are unaffected by those statutes. ORS 659A.127(6), for example, allows employers to require employees to conform to both state and federal laws surrounding illegal drug use:

"ORS 659A.112 to 659A.139 do not affect the ability of an employer to do any of the following:

"(1) It is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because an otherwise qualified person is a disabled person.

"(2) An employer violates subsection (1) of this section if the employer does any of the following:

"* * * * *

"(e) The employer does not make reasonable accommodation to the known physical or mental limitations of an otherwise qualified disabled person who is a job applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer."

As used within those provisions, the phrase "disabled person" has a specific meaning. ORS 659A.100(1)(a) provides:

"As used in ORS 659A.100 to 659A.145, unless the context requires otherwise:

"(a) 'Disabled person' means an individual who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment or is regarded as having such an impairment."

Under the Americans with Disabilities Act (ADA), the federal definition of "disability" is similar to the Oregon definition:

"The term 'disability' means, with respect to an individual—

"(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

"(B) a record of such an impairment; or

"(C) being regarded as having such an impairment."

42 USC § 12102(2) (2000). The similarity between those two definitions is noteworthy because ORS 659A.139 also

---

"* * * * *

"(6) An employer may require that employees comply with all federal and state statutes and regulations regarding alcohol and the illegal use of drugs."

requires Oregon courts to construe the law's disability-related employment provisions in a specific manner. That so-called "construction statute," ORS 659A.139, provides:

> "ORS 659A.112 to 659A.139 shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended."

We turn now to the primary question before us: Is plaintiff a disabled person under ORS 659A.112 to 659A.139? As previously noted, the Court of Appeals answered that question affirmatively. It reasoned that the statutory construction requirement set out in ORS 659A.139—and with that requirement, the notion of mitigating measures that the United States Supreme Court addressed in *Sutton*, 527 US 471—cannot be applied to the statutory definition of "disabled person" in ORS 659A.100(1)(a) because that definition is not within the range of statutes to which ORS 659A.139 expressly applies.[4] Accordingly, the Court of Appeals held that, for the purposes of ORS 659A.112 to 659A.139, the legislature intended the phrase "disabled person" to be interpreted without regard for the Supreme Court's holding in *Sutton*, and without regard for the impact of mitigating measures on a disability.

Although the Court of Appeals invoked *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993), in its discussion of the term "disabled person" in ORS 659A.100(1)(a), the court's analysis did not go far enough. The Court of Appeals stopped short of examining the actual terms that make up the text of the statutory definition. Engaging in that analysis now, we conclude that, even without determining the applicability of federal precedents like *Sutton*, the plain text of ORS 659A.100(1)(a) evinces a clear legislative intent to define "disabled person" in a manner that is contrary to the Court of Appeals' reading of that term.

---

[4] We note that, in the text of ORS 659A.100 that immediately proceeds the definition of "disabled person" in the statute, the legislature indicated that the definition was subject to ORS 659A.139 by providing initially that the statutory definition was to be "used in ORS 659A.100 to 659A.145, unless the context requires otherwise."

ORS 659A.100(1)(a) identifies a "disabled person" as someone having an impairment that "substantially limits" a major life activity. ORS 659A.100(2)(d) goes on to define the term "substantially limits" to mean:

"(A)   The impairment *renders the individual unable to perform a major life activity* that the average person in the general population can perform; or

"(B)   The impairment *significantly restricts the condition, manner or duration under which an individual can perform a particular major life activity* as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity."

(Emphasis added.)

■   The statutory definition of "substantially limits" makes clear that determining the applicability of Oregon's disability law requires an individualized assessment. In other words, the statutory scheme requires a determination whether the identified impairment "renders" an *individual* unable to perform a major life activity or significantly restricts the condition, manner, or duration under which that major life activity can be performed. In our view, that means that the legislature did not intend to categorize an impairment as substantially limiting if, for example, medication could ameliorate the effects of impairment such that the individual would be capable of performing the otherwise affected major life activity. To read the phrase "substantially limits" differently would ignore the fact that an impairment may be disabling for some individuals but not others, depending on factors such as the particular stage or seriousness of a disease or disorder, the side-effects of any medication taken to treat it, or the effects of collateral conditions that, in combination, could render one particular impairment disabling. To illustrate, if courts fail to consider the effects of mitigating measures, they might conclude that an individual afflicted by hypertension is a "disabled person" simply because for most people, the failure to treat that condition eventually results in substantial limitations to at least one major life activity

due to heart disease, kidney disease, hardening of the arteries, or stroke. Under that analysis, an individual who controls his or her hypertension through medication—as many today do—nevertheless would be considered a "disabled person" simply because the individual had the condition. That approach would require the court to evaluate persons with similar impairments according to general group characteristics, rather than as individuals.

In addition, the statutory definition of the term "substantially limits" uses key terms such as "renders" and "restricts," in the present, indicative verb tense. ORS 659A.100(2)(d)(B). The legislature's use of present tense indicates that, to be considered disabled under the statutory definition, a person must possess a substantial limitation that operates *presently*, as opposed to potentially or hypothetically. The Court of Appeals disregarded that requirement by reading the statute to include conditions that, due to mitigating measures, may not actually rise to the level of a present substantial limitation. Had the legislature intended that outcome, it would have incorporated into the definition of "substantially limits" other terms, such as "may," "might," or "could," thereby connoting a tentative or potential effect. The legislature, of course, did not do so.

◼ Based on the foregoing statutory analysis, we conclude that, with regard to the substantive provisions set out in ORS 659A.112 to 659A.139, the legislature intended the definition of "disabled person" to be construed in light of mitigating measures that counteract or ameliorate an individual's impairment. The Court of Appeals erred in concluding otherwise.

◼ In this case, plaintiff argues that he is disabled by virtue of his leg spasms, a condition that he claims substantially limits one of his major life activities, *i.e.*, sleeping. However, as the trial court noted below, it is undisputed that plaintiff is able to counteract those leg spasms and the resulting sleep problems by using prescription medication. As a result, we conclude that, because plaintiff can counteract his physical impairment through mitigating measures, his impairment does not, at this time, rise to the level of a substantial limitation on a major life activity. Consequently, we

conclude that plaintiff is not a "disabled person" for purposes of ORS 659A.112 to 659A.139. Because plaintiff is not a "disabled person" under those statutes, employer had no statutory duty to accommodate plaintiff's physical limitation in the manner sought by plaintiff.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

**KISTLER, J.,** concurring.

I join the majority's opinion holding that plaintiff is not a "disabled person" within the meaning of ORS 659A.100(1)(a). I write separately because, in my view, plaintiff's employment discrimination claim suffers from an additional defect: Federal law preempts state employment discrimination law to the extent that it requires employers to accommodate medical marijuana use.

As the majority notes, plaintiff's doctor approved plaintiff's participation in Oregon's medical marijuana program, and plaintiff smokes marijuana at night to help him sleep. Defendant employs plaintiff and has adopted a zero-tolerance policy; defendant prohibits its employees from reporting to work with the "presence of [a] controlled substance, intoxicant, or illegal drug in their system." Because plaintiff violated that policy, defendant terminated him. Plaintiff brought this action claiming that, because he was an otherwise qualified disabled employee, ORS 659A.112(2)(e) required defendant to accommodate his medical use of marijuana and that the failure to do so constituted employment discrimination.

I agree with the majority that plaintiff is not a "disabled person" who can invoke the employment discrimination laws. Even if he were, however, federal law still would preempt plaintiff's claim that his employer must accommodate his medical use of marijuana. Plaintiff notes that ORS 659A.112(2)(e) requires employers to "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified disabled [employee]" unless doing so would impose an undue hardship on the employer. Plaintiff recognizes that, as a matter of state law, employers do not have to accommodate the "illegal use of drugs." ORS

659A.124. He observes, however, that the "illegal use of drugs" does not include "the use of a drug taken under the supervision of a licensed health care professional[.]" *See* ORS 659A.100(1)(c) (defining "illegal use of drugs").[1] Plaintiff argues that, because he uses marijuana under his physician's supervision, the employment discrimination statutes require defendant to accommodate his medical use of marijuana.

The difficulty with plaintiff's argument, in my view, is that federal law preempts the state employment discrimination statute to the extent that it requires defendant to accommodate plaintiff's medical marijuana use. The federal Controlled Substances Act prohibits possessing, manufacturing, dispensing, and distributing marijuana. 21 USC §§ 841(a), 844. That prohibition applies even when a person possesses, manufactures, dispenses, or distributes marijuana for a medical use. *United States v. Oakland Cannabis Buyers' Cooperative*, 532 US 483, 494 and n 7, 121 S Ct 1711, 149 L Ed 2d 722 (2001) (no medical necessity defense to prohibition against distributing marijuana; holding applies equally to other prohibited acts). Plaintiff cannot use marijuana without possessing it, and the federal prohibition on possession is inconsistent with the state requirement that defendant accommodate its use.

State law cannot require what federal law prohibits; when the two laws conflict, federal law controls. *See California v. ARC America Corp.*, 490 US 93, 100-01, 109 S Ct 1661, 104 L Ed 2d 86 (1989) (state law preempted when "it actually conflicts with federal law, that is, when compliance with both state and federal law is impossible"). It follows that the Controlled Substances Act preempts state employment discrimination law to the extent that the state law requires accommodation of plaintiff's medical use of marijuana.

---

[1] ORS 659A.100(1)(c) provides:

" 'Illegal use of drugs' means any use of drugs, the possession or distribution of which is unlawful under state law or under the Controlled Substances Act, 21 U.S.C.A. 812, as amended, but does not include the use of a drug taken under supervision of a licensed health care professional, or other uses authorized under the Controlled Substances Act or under other provisions of state or federal law."

Plaintiff has advanced only one argument in response. He relies on an informal opinion that the Oregon Attorney General issued in response to the United States Supreme Court's decision in *Gonzales v. Raich*, 545 US 1, 125 S Ct 2195, 162 L Ed 2d 1 (2005). In that opinion, the Attorney General reasoned that *Raich*, which upheld Congress's authority to prohibit the medical use of marijuana, would not affect the operation of Oregon's medical marijuana program.

The Attorney General's reasoning does not advance plaintiff's claim that state law requires defendant to accommodate his medical marijuana use. Among other things, the Oregon Medical Marijuana Act exempts, from the operation of state criminal laws, persons who possess a "registry identification card" and who are "engaged in * * * the medical use of marijuana." ORS 475.309(1). In reasoning that the decision in *Raich* did not affect Oregon's medical marijuana program, the Attorney General focused on that exemption. Noting that "[t]he [Oregon Medical Marijuana] Act protects medical users from state criminal prosecution for production, possession, or delivery of a controlled substance," the Attorney General concluded that the fact that the federal government criminalizes the medical use of marijuana does not require the state to do so.

The fact that the state may choose to exempt medical marijuana users from the reach of the state criminal law does not mean that the state can affirmatively require employers to accommodate what federal law specifically prohibits. Federal law preempts the latter decision but not the former. In my view, given the Controlled Substances Act, defendant had no binding state obligation to accommodate plaintiff's medical marijuana use.