Argued and submitted August 1, reversed and remanded November 6, 2002,
petition for review denied January 22, 2003 (335 Or 180)

# Scott EVANS,
*Appellant,*

*v.*

# MULTNOMAH COUNTY
# SHERIFF'S OFFICE,
*Respondent.*

## 0002-01090; A112917

57 P3d 211

Jacqueline L. Koch argued the cause for appellant. With her on the briefs was Koch & Deering.

Jacqueline A. Weber, Assistant County Attorney, argued the cause for respondent. With her on the brief was Thomas Sponsler, County Attorney for Multnomah County.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Plaintiff, a corrections officer, brought this claim against his employer, the Multnomah County Sheriff's Office (defendant), claiming that defendant violated Oregon's fair employment statutes by discharging him instead of reasonably accommodating his disability. Defendant moved for summary judgment on the grounds that plaintiff was not a "disabled person" as that term is defined by the statutes and, alternatively, if he was disabled, no reasonable accommodation was possible because his disability prevented him from performing an essential function of his position. The trial court granted the motion and entered a judgment of dismissal in defendant's favor. Plaintiff appeals, and we reverse.

On review of summary judgment, we state the facts in the light most favorable to the nonmoving party, in this case plaintiff. *Volt Services Group v. Adecco Employment Services*, 178 Or App 121, 123, 35 P3d 329 (2001), *rev den*, 333 Or 567 (2002).

Following heart valve replacement surgery, plaintiff, on orders from his doctor, began taking a prescription anticoagulant drug. The doctor reported in a letter to defendant that this drug causes "an increased risk of serious internal or external bleeding or hemorrhage if [plaintiff] is physically injured" and that he had advised plaintiff "to avoid contact with inmates since inmate contact would put him at statistically increased risk of potential traumatic injury." The doctor also stated that the drug was a necessary medication for plaintiff and would be so permanently.

During plaintiff's recovery from surgery, defendant assigned him to temporary light duty as a background investigator. That post did not require any inmate contact. Plaintiff requested permanent assignment to such noncontact posts, maintaining that such an assignment was a reasonable accommodation, given defendant's operational structure and policies. In particular, plaintiff noted that defendant employed around 500 "corrections deputies" like plaintiff. Deputies may rotate among assignments on a daily, weekly, monthly, or even yearly basis, with few, if any, permanent assignments. Plaintiff identified at least 18 posts filled by

corrections officers that involve little or no inmate contact and the duties of which he would be willing and able to perform.

Further, defendant has a settlement agreement with another employee who, like plaintiff, must avoid inmate contact. The agreement requires that she be assigned only to secure control posts. Defendant also maintains a Temporary Alternative Work Assignment (TAWA) program for temporarily disabled employees. The program assigns those employees to certain "limited duty" positions; the assignments are reviewed every 30 days and can be extended at defendant's discretion.

Defendant refused to accommodate plaintiff's request. Instead, it terminated plaintiff's employment, asserting that all sworn deputies must be willing and able to rotate through all posts. Plaintiff then brought this action, alleging that defendant's refusal violated ORS 659A.112,[1] which requires employers to make reasonable accommodations for otherwise qualified disabled persons unless doing so imposes an undue hardship:

> "(1) It is an unlawful employment practice for any employer * * * to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because an otherwise qualified person is a disabled person.
>
> "(2) An employer violates subsection (1) of this section if the employer does any of the following:
>
> "* * * * *
>
> "(e) The employer does not make reasonable accommodation to the known physical or mental limitations of an otherwise qualified disabled person who is a job applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer."

Defendant moved for summary judgment, contending that plaintiff was not a disabled person for purposes of the statute

---

[1] This claim began before the 2001 renumbering of relevant statutes in ORS chapter 659. References in this opinion are to the new numbers.

and that, if he was, he was not "otherwise qualified" as that term is defined in ORS 659A.115: "the person, with or without reasonable accommodation, can perform the essential functions of the position." The trial court granted summary judgment for defendant, concluding that, "as a matter of law," plaintiff "cannot perform the essential functions of the position of deputy corrections officer and, therefore, * * * he is not otherwise qualified for the position." The court assumed without deciding that plaintiff's condition constituted a disability under ORS 659A.112. This appeal ensued.

We begin with the threshold question: Is plaintiff a "disabled person" and therefore entitled to claim the protections set out in ORS 659A.112? Several definitions that apply to all of the statutes in ORS chapter 659A bear directly on that question. ORS 659A.100 defines "disabled person" in part as "a person who has a physical or mental impairment which substantially limits one or more major life activities." ORS 659A.100(1). The statute then defines a "major life activity" as including "self-care, ambulation, communication, transportation, education, socialization, *employment* and ability to acquire, rent or maintain property." ORS 659A.100(2)(a) (emphasis added). As relevant here, "substantially limits" means:

> "The impairment significantly restricts the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity."

ORS 659A.100(2)(d)(B). The Bureau of Labor and Industries, the agency authorized to promulgate rules to implement chapter 659A, ORS 659A.805(1)(e), further defines "substantial limitation" as it relates to employment as follows:

> "To be substantially limited in the major life activity of working, a person must be significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to the ability of an average person with comparable skill, experience, education or other job-related requirements needed to perform those same positions."

OAR 839-006-0205(6)(b). For purposes of this case, then, plaintiff is a "disabled person" if he has a physical impairment that significantly limits his ability to perform a broad range of jobs in various classes that a person of comparable qualifications could perform.

Plaintiff has presented evidence in the form of a letter from his doctor that his prescribed regimen of anticoagulants creates "an increased risk of serious internal or external bleeding or hemorrhage if he is physically injured." That statement explicitly states neither that he is unable "to perform a class of jobs or a broad range of jobs in various classes" nor how that inability compares to the ability of "an average person with comparable skill, experience, education or other job-related requirements needed to perform those same positions." *Id.* However, when reviewing a grant of summary judgment, we look not only to facts in evidence but to inferences in favor of the nonmoving party that may be drawn from those facts. *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001). Here, plaintiff has produced evidence that he must avoid activities that might cause physical trauma. From that, a reasonable factfinder could infer that plaintiff's condition renders him unable to perform many jobs in, for example, the construction, maintenance, law enforcement, and manufacturing fields that an average person of like skill and experience would be able to perform. A reasonable factfinder could conclude that those amount to "a class of jobs or a broad range of jobs in various classes." OAR 839-006-0205(6)(b).

Defendant, however, notes that ORS 659A.139 requires Oregon's disability discrimination statutes to "be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended." According to defendant, the Oregon statute's definition of "disabled person" is substantially similar to the federal one, and a recent United States Supreme Court case, *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 US 184, 122 S Ct 681, 151 L Ed 2d 615 (2002), defines that term so as to disqualify plaintiff. We agree that the Oregon and federal definitions of "disabled person" are similar. The federal Americans with Disabilities Act (ADA) provides:

"The term 'disability' means, with respect to an individual—

"(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual[.]"

42 USC § 12102(2). The Oregon definition similarly provides:

" 'Disabled person' means a person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such an impairment or is regarded as having such an impairment."

ORS 659A.100(1). The federal act does not define the term "major life activities" but regulations promulgated by the Equal Employment Opportunity Commission (EEOC) define major life activities as "*functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.*" 29 CFR 1630.2(h)(2)(i) (emphasis added). Oregon law expressly lists "employment" as a "major life activity." ORS 659A.100(2)(a). Thus, the text of Oregon law is nearly identical to the text of federal law, including relevant federal regulations.

That conclusion, however, does not help defendant here. Assuming that ORS 659A.139 requires (or can require) Oregon courts to follow federal case law decided after the Oregon statute was enacted, *but see Seale et al v. McKennon*, 215 Or 562, 572-73, 336 P2d 340 (1959) (state law cannot incorporate future federal regulations), nothing in *Toyota* is inconsistent with interpreting ORS 659A.112 as we have done here to mean that plaintiff is disabled for purposes of the statute if he is substantially limited in his ability to perform a broad class of jobs.

In *Toyota*, an employee suffered from carpal tunnel syndrome and other ailments that prevented her from performing many of the manual tasks that her assembly line job required. 534 US at 187-88. She claimed that the impairment made her a disabled person for purposes of the ADA because it was a substantial limitation in the major life activity of "performing manual tasks" necessary for her particular job. The Court held that the proper frame of reference for evaluating the significance of an interference with the major life

activity of "performing manual tasks" was all the manual tasks that are of central importance to most people's daily lives, not merely those that are central to their work activities. *Id.* at 200-01. The Court expressly noted, however, that the case dealt only with the major life activity of "performing manual tasks" and *not* the major life activity of "employment." *Id.* at 200.

**1, 2.** To determine whether a particular disability substantially impairs one's major life activity of employment, the Court concluded, the proper frame of reference remains the workplace only, and the proper test remains the one articulated in *Sutton v. United Airlines, Inc.*, 527 US 471, 491, 119 S Ct 2139, 144 L Ed 2d 450 (1999): "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires * * * that plaintiffs allege they are unable to work in a broad class of jobs." *Toyota*, 534 US at 200. That is the same test we apply here under Oregon law. Under that law, plaintiff has, we conclude, raised an issue of material fact. Our conclusion, therefore, is not inconsistent with any provision of the ADA as construed in *Toyota*.

We turn, then, to defendant's assertion that plaintiff has not raised an issue of material fact as to whether defendant committed an unlawful employment practice. Under ORS 659A.112(2)(e), an unlawful employment practice occurs if an employer "does not make reasonable accommodation to the known physical or mental limitations of an otherwise qualified disabled person * * * unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer." Defendant does not argue that accommodating plaintiff by assigning him to a rotation of posts with little or no inmate contact would impose a hardship. Whether defendant's refusal amounts to an unlawful employment practice therefore depends on whether plaintiff is an "otherwise qualified" employee. That term, in turn, is defined as an employee who, "with or without reasonable accommodation, can perform the essential functions of the position." ORS 659A.115. The question whether defendant has committed an unlawful employment practice, then, reduces to the question whether

inmate contact at more than a very limited level is an "essential function" of the plaintiff's position.

OAR 839-006-0205(4)(a) defines "essential functions" as "the fundamental duties of a position a disabled person holds or desires." It also lists reasons that a job function may be essential:

"(A) The position exists to perform that function;

"(B) A limited number of employees is available to carry out the essential function; or

"(C) The function is highly specialized so that the position incumbent was hired for the expertise or ability required to perform the function."

In addition, the rule lists five factors constituting "[e]vidence of whether a particular function is essential":

"(A) The amount of time spent performing the function;

"(B) The consequences of not performing the function;

"(C) The terms of a collective bargaining agreement;

"(D) The work experience of past incumbents in the job; and

"(E) The current work experience of incumbents in similar jobs."

OAR 839-006-0250(4)(b). Further, ORS 659A.115 provides that "due consideration shall be given to the employer's determination as to the essential functions of a position. If an employer has prepared a written description before advertising or interviewing applicants for a job, the position description shall be considered evidence of the essential functions of the job."

To determine whether being willing and able to have inmate contact is an essential function of the position at issue under the foregoing criteria, we must first establish what that position is. Defendant defines it as "corrections deputy" so as to include all of the assignments into which most other sworn deputies rotate. Plaintiff, on the other hand, considers the "position" at issue to consist of the individual posts to

which a corrections deputy might be assigned or a combination of them that includes only ones with no significant inmate contact.

We have already confronted that disagreement under nearly identical facts and resolved it in favor of plaintiff. In *Anglin v. Dept. of Corrections,* 160 Or App 463, 982 P2d 547, *rev den,* 329 Or 357 (1999), the plaintiff was a corrections officer at Eastern Oregon Correctional Institute (EOCI) who, due to an injury to his right hand, had been advised to avoid direct physical confrontations with inmates. *Id.* at 465-66. When EOCI terminated him, he claimed a violation of, among other statutes, the predecessor to ORS 659A.112. *Id.* at 465. EOCI argued that being willing and able to fire a gun and to respond to emergencies were essential functions of the position, which it defined as the entire job classification of "corrections officer." *Id.* at 472. The plaintiff maintained that the appropriate position for purposes of the statute was a particular one of the assignments into which corrections officers rotated. *Id.*

We focused on the statutory policy statement, which is identical to the current ORS 659A.103. That statute provides:

"(1)  It is declared to be the public policy of Oregon to guarantee disabled persons the fullest possible participation in the social and economic life of the state, [and] to engage in remunerative employment * * * without discrimination.

"(2)  The right to otherwise lawful employment without discrimination because of disability where the reasonable demands of the position do not require such a distinction, * * * [is] hereby recognized and declared to be the right[ ] of all the people of this state. It is hereby declared to be the policy of the State of Oregon to protect these rights and ORS 659A.100 to 659A.145 shall be construed to effectuate such policy."

In light of that policy, we held that

"[t]he legislature did not intend for an employer to be able to unilaterally declare an entire profession or job classification off limits to disabled people on the ground that their disabilities prevent them from performing some of the

duties of some of the positions within that profession or job classification. * * * A holding that an employer could avoid compliance with laws prohibiting discrimination on the basis of disability in that manner would eviscerate the law, undermining its stated purpose of allowing disabled individuals 'the fullest possible participation in the * * * economic life of the state[.]' "

*Anglin*, 160 Or App at 473.

Defendant maintains that *Anglin* is no longer controlling because, after we decided that case, the legislature enacted ORS 659A.139, the "lockstep" statute requiring consistency with the federal ADA; that *Toyota* embodies a policy that is contrary to the expansive one contained in ORS 659A.103, on which *Anglin* depended; and that therefore, in order to conform to federal law, we, too, must adopt a more restrictive interpretation of Oregon law.

We are not persuaded. Again, assuming that the lockstep statute can and does require Oregon courts to conform their interpretation of ORS 659A.100 through 659A.145 to later-enacted federal case law interpreting the ADA, we nonetheless conclude that nothing in *Toyota* negates the holding in *Anglin*. *Toyota* does not address the underlying policy behind the ADA, and, even if it did so in such a way as to negate or undermine the Oregon statute's policy statement, the lockstep statute would not require us to adopt the federal standard. ORS 659A.139 requires consistency with federal law only "to the extent possible." It is not possible to achieve consistency between an implicit federal policy mandating a narrow interpretation of the ADA and an explicit Oregon policy mandating a broad one. We therefore conclude that *Anglin* requires us to regard the relevant position for purposes of this case as consisting of the specific assignments plaintiff requested. *Cf. Cripe v. City of San Jose*, 261 F3d 877 (9th Cir 2001) (noting that it is "fully consistent with the purpose and intent" of the ADA to treat the term "position" as referring to specific types of police officer positions rather than police officer job in general).

■   The dispositive question in this case, then, reduces to whether being willing and able to hold assignments requiring

significant inmate contact is an essential function of the positions plaintiff has specified. Except in those obvious cases where underlying material facts are undisputed, the question whether a disability renders an employee not "otherwise qualified" is a question of fact for the jury. *Anglin*, 160 Or App at 475 n 10. Plaintiff's affidavit identifies 18 different positions, some of which have multiple shifts, that involve "little or no possibility of contact with inmates." He has also provided the deposition of the chief deputy sheriff of Multnomah County, who heads the Corrections Facilities Division of the Multnomah County Sheriff's Office. In her deposition, she acknowledges that several of the positions plaintiff identified do not typically require inmate contact, although the deputies in those positions would be expected to respond in the event of an emergency if they were on their way to or from the post, or during lunch. In addition, she agreed that the background investigation position that plaintiff held temporarily at the time his employment was terminated did not involve any inmate contact. Despite that evidence, defendant disputes the degree to which inmate contact is required in the positions plaintiff identified. That dispute raises a genuine issue of material fact, thus rendering summary judgment inappropriate. ORCP 47 C.

Reversed and remanded.