Argued and submitted April 8, 2003, reversed January 12, 2005

# Robert WASHBURN,
## *Appellant,*

### *v.*

# COLUMBIA FOREST PRODUCTS, INC.,
## *Respondent.*

### 0012-12516; A116664

104 P3d 609

Philip M. Lebenbaum argued the cause for appellant. With him on the briefs was Hollander, Lebenbaum & Gannicott.

Scott G. Seidman argued the cause for respondent. With him on the brief were Lynda J. Hartzell and Tonkon Torp LLP.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Deits, Judge pro tempore.

DEITS, J. pro tempore.

**DEITS, J. pro tempore**

Plaintiff appeals from a judgment entered after the trial court granted summary judgment to defendant on plaintiff's claim that defendant had failed to meet its obligation to reasonably accommodate plaintiff's disability under Oregon disability law. Plaintiff challenges the trial court's conclusions that (1) mitigating measures must be considered when determining whether or not an individual is disabled and therefore protected by Oregon disability law and (2) the Oregon Medical Marijuana Act (OMMA), ORS 475.300 to 475.346, and specifically ORS 475.340(2), exempts employers from accommodating employees reporting to work with evidence of marijuana in their systems. Because the material facts are undisputed, we review the summary judgment record to determine whether defendant is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). We reverse.

As noted, the material facts are undisputed. This dispute arises from defendant's termination of plaintiff's employment. Defendant employed plaintiff as a millwright at defendant's Klamath Falls facility. Plaintiff's duties included maintaining dangerous heavy equipment, and accordingly his job is "safety sensitive."

Plaintiff suffers from muscle spasms that limit his ability to sleep when untreated.[1] Before August 1999, plaintiff generally took prescription medication to help him sleep. In August 1999, plaintiff's doctor approved plaintiff for participation in Oregon's medical marijuana program. Plaintiff subsequently applied for and received a registry identification card pursuant to ORS 475.309. After receiving his doctor's approval, plaintiff began smoking marijuana before he went to sleep each night. Plaintiff claims that marijuana is more effective than the prescription drugs that he had previously taken to help him sleep and that it completely resolves his sleeping problem.

---

[1] The parties agree that an issue of fact exists about whether the spasms "substantially limit" his ability to sleep when left untreated.

Defendant has a workplace drug policy that prohibits employees from "[r]eport[ing] for work with the presence of [a] controlled substance, intoxicant, or illegal drug in their system." The policy defines controlled substances as "all forms of narcotics, depressants, stimulants, hallucinogens, and cannabis, whose sale, purchase, transfer, use or possession is prohibited by law." An employee who violates the policy is "subject to disciplinary action, up to and including termination."

On several occasions, plaintiff provided defendant a urine sample that defendant tested for drugs. The parties agree that those tests did not, and indeed could not, reveal whether plaintiff was under the influence of marijuana at the time of the test, but only that plaintiff had used marijuana sometime in the previous two to three weeks. In October 2000, plaintiff again provided defendant with a urine sample for a drug test. That test also indicated that plaintiff had used marijuana in the previous two to three weeks. After it received the results of that test, defendant placed plaintiff on a leave of absence.

Plaintiff then requested that defendant accommodate his alleged disability by allowing him to take a different test that would indicate not whether he had used marijuana in the past, but whether he was impaired by his marijuana use while at work. Instead, defendant conditioned plaintiff's return to work on his providing a urine sample that indicated that plaintiff had not used marijuana in the previous two to three weeks. Plaintiff was unable to supply such a sample because he continued to use marijuana throughout his leave of absence. Defendant terminated plaintiff's employment in March 2001.

Plaintiff brought this claim against defendant, alleging that defendant had failed to meet its obligation to reasonably accommodate his disability under ORS 659A.112(2)(e).[2] Defendant moved for summary judgment, asserting, among other things, that, as a matter of law, (1) plaintiff was not a

_____

[2] In 2001, the legislature renumbered ORS 659.400 to 659.449 as ORS 659A.100 to 659A.139. Because the legislature did not make any substantive changes to those statutes at that time, we refer to them by their current numbers.

qualified individual with a disability and was therefore not protected by Oregon disability law and (2) the OMMA does not require employers to accommodate medical marijuana users. Plaintiff countered that he was disabled under Oregon law and that the OMMA does not allow employers to discriminate against medical marijuana users who do not use marijuana at work and are not impaired by marijuana while at work.

The trial court agreed with defendant's arguments, concluding, as to the first, that, "if the individual who may have a substantial impairment of a major life activity * * * with mitigating measures alleviates the problem, then the person is not disabled under [Oregon disability law]." The trial court held that, because the only evidence on the issue indicated that plaintiff's use of marijuana alleviated his inability to sleep, plaintiff was not disabled as a matter of law. Regarding defendant's second argument, the trial court concluded that, under ORS 475.340, "an employer is not required to accommodate the use [of marijuana], meaning with having it in one's system." The trial court accordingly granted summary judgment to defendant. Plaintiff appeals, asserting that the trial court erred as a matter of law as to both of those conclusions.

■ We first address whether plaintiff is a disabled person under ORS 659A.100(1)(a). The issue presented is whether a person is a "disabled person" under that statute if available mitigating measures render the relevant limitation less than substantial. The issue is one of first impression in Oregon.

Before the trial court, defendant contended that a United States Supreme Court decision regarding a similar provision of federal law is precedent not only as to the Americans with Disabilities Act (ADA) of 1990, 42 USC §§ 12101 to 12213 (2000), but also as to Oregon law. In support of that theory, defendant cited ORS 659A.139, which provides that "ORS 659A.112 to 659A.139 shall be construed to

the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended." In *Sutton v. United Airlines, Inc.*, 527 US 471, 482-83, 119 S Ct 2139, 144 L Ed 2d 450 (1999), the Supreme Court concluded that, if a person uses mitigating measures that render that person less than substantially limited in a major life activity, the person is not a "disabled person" under 42 USC § 12102(2)(A) (2000) unless the mitigating measures create another substantial limitation.[3] The trial court agreed with defendant that Oregon courts are bound by *Sutton* because of ORS 659A.139 and concluded that, on the record before it, plaintiff was not disabled as a matter of law because it was undisputed that, when plaintiff uses marijuana, he does not have difficulty sleeping.

As noted, ORS 659A.139 requires us, to the extent possible, to construe some portions of Oregon disability law consistently with the ADA. We have noted that ORS 659A.139 appears to be a "lockstep" statute, designed to make state law a mirror image of federal law in many respects. *Evans v. Multnomah County Sheriff's Office*, 184 Or App 733, 743, 57 P3d 211 (2002), *rev den*, 335 Or 180 (2003). The language used in both state and federal law to define "disability" is quite similar. ORS 659A.100(1)(a) defines a disabled person as "an individual who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment or is regarded as having such an impairment." The federal definition of "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of

---

[3] Plaintiff did not argue to the trial court, nor does he contend on appeal, that the mitigating measure of marijuana use itself creates a substantial limitation in the major life activity of employment. We note that, to succeed under such a theory, "a person must be significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes * * *." OAR 839-006-0205(6)(b); *see also Lansford v. Georgetown Manor, Inc.*, 192 Or App 261, 272-74, 84 P3d 1105, *adh'd to as modified on recons*, 193 Or App 59, 88 P3d 305, *rev den*, 337 Or 182 (2004) (summary judgment was proper where record showed no issue of fact about whether the plaintiff was significantly restricted in the ability to work in a broad class of jobs). Presumably because he did not intend to rely on such a theory, plaintiff did not allege it in his complaint or submit any affidavits that would support the conclusion that he is disabled because he would be disqualified from a broad class of jobs because of his mitigating use of marijuana.

[the] individual[.]" 42 USC § 12102(2)(A) (2000). Despite that similarity, however, ORS 659A.100 is not subject to the "lock-step" statute because it is not within the range of statutes that the legislature identified in ORS 659A.139 that are to be construed, to the extent possible, in a manner consistent with federal constructions of parallel provisions.[4]

Therefore, the construction of similar provisions of the ADA by federal courts does not control our decision whether, under ORS 659A.100(1)(a), a person has a physical or mental impairment that substantially limits one or more major life activities if mitigating measures are available that render the limitation less than substantial.[5] To answer that question, we must attempt to determine the intent of the Oregon legislature in enacting the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We first examine the text of the statute in context. If the meaning of the statute is clear from its text and context, our analysis is complete. If the meaning of the statute is ambiguous after that analysis, we will then consider legislative history. If the legislative history does not make legislative intent clear, we consider maxims of statutory construction. *Id.* at 610-12.

---

[4] As noted, Oregon's disability statutes have been renumbered since the lock-step statute was enacted. Reviewing the session laws that first included the lock-step statute confirms that the legislature intended only certain provisions of Oregon's disability law to be construed consistently with the ADA and that those provisions were not to include the definition of "disabled person." In particular, Oregon Laws 1997, chapter 854, section 11, provided, "Sections 2 to 11 of this 1997 Act shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended." The definition of disabled person in that Act was located in section 12. Or Laws 1997, ch 854, § 12.

[5] In *Evans*, we assumed without deciding that ORS 659A.139 required us to construe "disabled person" in ORS 659A.100 consistently with its federal counter-part. 184 Or App at 739. Because that assumption was not necessary to our conclusion in *Evans*, our conclusion here is not inconsistent with the reasoning or holding of that case. Moreover, we reiterate the doubt we expressed in *Evans*, 184 Or App at 739, that ORS 659A.139 requires, or can require, Oregon courts to follow federal case law decided after ORS 659A.139 was enacted. *See Seale et al. v. McKennon*, 215 Or 562, 572-73, 336 P2d 340 (1959). We observe that, when the lockstep statute was enacted, the federal circuit courts that had addressed the issue had uniformly concluded that the determination of whether an individual was "disabled" was to be made without considering mitigating measures. *Doane v. City of Omaha*, 115 F3d 624, 627 (8th Cir 1997), *cert den*, 522 US 1048 (1998); *Harris v. H & W Contracting Co.*, 102 F3d 516, 520-21 (11th Cir 1997); *Holihan v. Lucky Stores, Inc.*, 87 F3d 362, 366 (9th Cir 1996), *cert den*, 520 US 1162 (1997).

Under ORS 659A.100(1)(a), "disabled person" means

"an individual who has a physical or mental impairment that substantially limits one or more major life activities[.]"

Under defendant's proposed construction, "disabled person" would mean "an individual who has physical or mental impairment that substantially limits one or more major life activities *unless mitigating measures render that limitation less than substantial.*" To accept that definition, we would have to add to the statute a requirement that the legislature did not place there. We may not insert what the legislature has omitted. ORS 174.010. Accordingly, we conclude that the trial court incorrectly granted summary judgment insofar as it reasoned as a matter of law that plaintiff was not a disabled person based on the fact that a mitigating measure—use of marijuana—alleviates plaintiff's difficulty sleeping. The proper issue is whether plaintiff's sleep, a major life activity, is substantially limited without mitigating measures. As to that issue, the parties agree that there is a genuine issue of a material fact.

■   We turn to the alternative basis for the trial court's grant of summary judgment. As noted, in moving for summary judgment, defendant also relied on a provision of the OMMA, ORS 475.340(2), that exempts employers from making any workplace accommodation for medical use of marijuana. ORS 475.340 provides, in part:

"Nothing in [the OMMA] shall be construed to require:

"* * * * *

"(2)   An employer to accommodate the medical use of marijuana in any workplace."

Defendant contended that "use" includes having evidence of marijuana use in one's system. The trial court agreed, stating:

"ORS 475.340 * * * does not mean that the only accommodation the employer is not required to provide is to someone who wants to actually smoke the marijuana in the workplace. They are not—an employer is not required to accommodate the use, meaning with having it in one's system."

As noted, ORS 475.340(2) provides that nothing in the OMMA is to be construed to require employers to accommodate the "medical use of marijuana" in the workplace. Under ORS 475.302(7), the "medical use of marijuana" means

> "the production, possession, delivery, or administration of marijuana, or paraphernalia used to administer marijuana, as necessary for the exclusive benefit of a person to mitigate the symptoms or effects of his or her debilitating medical condition."

Plaintiff contends that he never took any of the actions listed in ORS 475.302(7)—*i.e.*, produced, possessed, delivered, or administered marijuana or paraphernalia—while at work and so, under the statutory definition of "medical use of marijuana," he never "used" marijuana at work.

Defendant counters that it is inappropriate to import the definition of "medical use of marijuana" from ORS 475.302(7) into ORS 475.340(2). Instead, defendant urges that the term "medical use of marijuana" in ORS 475.340(2) should be read broadly to include having evidence of marijuana use in one's system. According to defendant, by having evidence of marijuana in his system while at work, plaintiff "used" marijuana in the workplace. Defendant also suggests that we must reject plaintiff's argued construction of the term "use" because it would allow medical marijuana users to be under the influence of medical marijuana while at work.

For the reasons that follow, we conclude that ORS 475.340(2) does not provide a basis for summary judgment in this case. The construction of the term "medical use of marijuana" in ORS 475.340(2) is a matter of first impression. Contrary to defendant's argument, it is not improper to consult the definition of that term in ORS 475.302(7). In fact, the legislature has directed that that definition apply here. *See* ORS ORS 475.302 ("[a]s used in ORS 475.300 to 475.346," terms have the meanings set out in ORS 475.302). The legislature has defined the "medical use of marijuana" as the "production, possession, delivery, or administration of marijuana, or paraphernalia used to administer marijuana." ORS 475.302(7). Accordingly, given the record in this case, we consider whether, by having evidence of marijuana use in his

urine, plaintiff engaged in the "production, possession, delivery, or administration of marijuana" in the workplace.

It is relatively easy to reach the conclusion that plaintiff did not engage in the production, delivery, or administration of marijuana in the workplace. "Production" means "the manufacture, planting, cultivation, growing or harvesting of a controlled substance."[6] ORS 475.005(20); *see also* ORS 475.302(8) ("production" in the OMMA has the same meaning as in ORS 475.005). There is no evidence that plaintiff planted, grew, or otherwise "produced" marijuana in the workplace. "Delivery" means "the actual, constructive or attempted transfer * * * from one person to another of a controlled substance[.]" ORS 475.005(8); *see also* ORS 475.302(3) ("delivery" in the OMMA has the same meaning as in ORS 475.005). There is no evidence that plaintiff transferred, or tried to transfer, marijuana to another person in the workplace. "Administration" refers to "the direct application of a controlled substance, whether by injection, inhalation, ingestion or any other means." *See* ORS 475.005(2).[7] There is no evidence that plaintiff smoked or otherwise consumed marijuana at work.

The somewhat closer question is whether, by having evidence of marijuana consumption in his urine, plaintiff "possessed" marijuana in the workplace. No form of the word "possess" is defined in ORS chapter 475 itself. However, we have previously rejected the contention that a person who has evidence of a controlled substance in his or her bloodstream "possesses" that substance for purposes of a prosecution for possession of a controlled substance under ORS 475.992. *State v. Daline*, 175 Or App 625, 632, 30 P3d 426 (2001) (holding that, because dominion and control are central to "possession," once a person consumes a controlled substance and the substance enters bodily fluids, the person no

---

[6] It is undisputed that marijuana is a controlled substance. *See* 21 USC § 812(c) (2000).

[7] Although the legislature did not expressly direct that the definitions in ORS 475.005 be consulted to ascertain the meaning of "administration" in ORS 475.302, the Controlled Substances Act (of which ORS 475.005 is a part) is a related statute to, and therefore relevant context for determining the meaning of, the OMMA. *See, e.g., State v. Tellez*, 170 Or App 745, 750, 14 P3d 78 (2000) (context includes provisions of related statutes).

longer possesses the substance). We perceive no reason why the view of the meaning of the term "possession" that we applied with respect to one part of ORS chapter 475 should not apply here as well. Accordingly, plaintiff did not engage in "possession" of marijuana in the workplace when he reported to work with evidence of marijuana consumption in his urine. Because plaintiff did not engage in the medical use of marijuana in the workplace, the trial court erred in concluding that ORS 475.340(2) excuses defendant from reasonably accommodating plaintiff and granting summary judgment on that basis.

■ Defendant alternatively argues that the trial court was "right for the wrong reason" because the actions it took against plaintiff were required by the Federal Drug-Free Workplace Act of 1998, 41 USC §§ 701-707 (2000), and nothing in Oregon disability law affects the ability of an employer to require that employees behave in conformance with the requirements established by the Federal Drug-Free Workplace Act. We first observe that it does not appear that defendant raised this argument in the trial court. Assuming that this argument could nevertheless be a proper basis for affirmance, *see Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 658-60, 20 P3d 180 (2001), analysis of the Federal Drug-Free Workplace Act does not lead to the result that defendant suggests.

The Federal Drug-Free Workplace Act imposes certain requirements on federal contractors and grant recipients. Contractors or grant recipients must (if individuals) themselves comply with the requirements or (if entities) notify their employees that they must comply with the requirements. Those requirements are "that the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance is prohibited" in the performance of the contract or grant (for individuals) or in the person's workplace (for employees of entity contractors or grant recipients). 41 USC §§ 701(a)(1)(A); 701(a)(2); 702(a)(1)(A); 702(2). In addition, a "drug-free workplace" is defined as "a site * * * at which employees of such entity are prohibited from engaging in the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance * * *." 41 USC §

706(1). No other pertinent terms are defined in the Federal Drug-Free Workplace Act.

The Federal Drug-Free Workplace Act prohibits only certain actions and then prohibits them only if they are "unlawful." Under Oregon law, plaintiff's medical use of marijuana is not unlawful.[8] Second, plaintiff did not take any of the actions that the Act prohibits in the workplace, *i.e.*, manufacture, distribution, dispensation, possession, or use of a controlled substance. Although the Federal Drug-Free Workplace Act does not define those terms, the first four are quite similar to the four things that constitute "medical use of marijuana" under ORS 475.302(7), while the fifth—"use"—if it does not subsume the first four, logically refers to actual consumption of a controlled substance. As established in our analysis of plaintiff's second assignment of error, he did none of those things "in the workplace" and so cannot be said to have violated (or have caused defendant to violate) the Federal Drug-Free Workplace Act.

In support of its argument, defendant cites *Gulf Coast Indus. Workers Union v. Exxon Co.*, 991 F2d 244 (5th Cir), *cert den*, 510 US 965 (1993). In our view, however, that case undermines, rather than supports, defendant's position. In *Gulf Coast Indus. Workers Union*, the Fifth Circuit upheld the district court's refusal to enforce an arbitration award under which the arbitrator had ordered Exxon to reinstate an employee who had tested positive for cocaine. As here, the

---

[8] Whether medical use of marijuana is unlawful under federal law is an open question. The United States Supreme Court has held that a medical marijuana cooperative and its director did not have a necessity defense to prosecution under the Federal Controlled Substances Act (CSA) for manufacturing and distributing marijuana. *United States v. Oakland Cannabis Buyers' Cooperative*, 532 US 483, 494, 121 S Ct 1711, 149 L Ed 2d 722 (2001). In that case, no patients had been prosecuted, and so their access to a necessity defense was not addressed. Moreover, the Court expressly declined to address the defendants' arguments that the CSA was unconstitutional. *Id.* In *Raich v. Ashcroft*, 352 F3d 1222 (9th Cir 2003), *cert granted*, ___ US ___, 124 S Ct 2909, 159 L Ed 2d 811 (2004), several users of marijuana under California's Compassionate Use Act and their caregivers sought declaratory and injunctive relief against the United States Attorney General and the Administrator of the Drug Enforcement Administration. The district court denied the plaintiffs' motion for a preliminary injunction. On interlocutory appeal, the Ninth Circuit reversed, concluding that the plaintiffs "demonstrated a strong likelihood of success on their claim that, as applied to them, the CSA is an unconstitutional exercise of Congress' Commerce Clause authority." *Id.* at 1227.

test administered to the employee did not indicate the degree of impairment, if any. *Id.* at 247 n 2. The Fifth Circuit based its refusal to uphold the arbitration order on its conclusion that reinstatement would violate public policy. *Id.*. The court found that that public policy had been expressed in several sources, including the Federal Drug-Free Workplace Act. After discussing the requirements of that Act, however, the court noted that "there was no showing that [the employee] possessed or *used* cocaine on the premises." *Id.* (emphasis added). In other words, in factual circumstances quite similar to those in this case, the court concluded that there was no evidence that the employee "used" a controlled substance on the job by virtue of having reported to work with evidence of it in his system. The court then turned to another applicable source of public policy, the regulations of the Defense Department, which governed Exxon as a defense contractor. *Id.* Under those regulations, contractors must have a program for achieving a drug-free *work force*, including assuring that their employees not engage in the illegal use of drugs "at any time." *Id.* at 251. There is no assertion that the regulations of the Defense Department apply here. Because plaintiff did not engage in any of the actions that employers must prohibit under the Federal Drug-Free Workplace Act, accommodating plaintiff would not require defendant to violate that Act.

For the reasons discussed above, we conclude that the trial court erred in granting summary judgment to defendant. However, whether defendant must accommodate plaintiff in these circumstances remains a matter for the trial court. ORS 475.340(2) makes clear that employers are not required to accommodate certain specified things. That the medical use of marijuana in the workplace need not be accommodated under ORS 475.340(2) does not *per se* establish, however, that, under all circumstances, an employee's medical use of marijuana *must* be accommodated by an employer. In other words, our conclusion that ORS 475.340(2) does not apply here does not mean that plaintiff is automatically entitled, under Oregon disability law, to the accommodation that he requested. That question remains to be resolved by the trial court, applying pertinent aspects of Oregon disability law to the particular facts. Although we express no opinion on the matter, we note that defendant's

concern about employees coming to work under the influence of marijuana might provide, under some circumstances, justification for not accommodating plaintiff given various provisions of Oregon disability law, including the concepts of *reasonable* accommodation, undue hardship, and qualification for a position.

Reversed.