Argued and submitted on September 19, 2007, affirmed June 11, 2008

EMERALD STEEL FABRICATORS, INC.,
*Petitioner,*

*v.*

BUREAU OF LABOR AND INDUSTRIES,
*Respondent.*

Bureau of Labor and Industries
3004; A130422

186 P3d 300

Terence J. Hammons argued the cause for petitioner. With him on the briefs was Hammons & Mills.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Paula A. Barran, Craig L. Leis, and Barran Liebman LLP filed the brief *amicus curiae* for Associated Oregon Industries.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Emerald Steel Fabricators, Inc. (employer) petitions for judicial review of a final order of the Bureau of Labor and Industries (BOLI) that found that, by discharging one of its employees (complainant) because of his medical marijuana use, employer failed to reasonably accommodate complainant's disability as required by Oregon statutes on unlawful discrimination against disabled persons, ORS 659A.110 - 659A.145. On review, employer asserts two assignments of error and argues that BOLI erred (1) in finding that employer was obligated to reasonably accommodate complainant's marijuana use; and (2) in denying employer the right to a jury trial in violation of Article I, section 20, of the Oregon Constitution. For the reasons that follow, we conclude that employer did not raise any of the issues below that it asserts in its first assignment of error and that employer's second assignment of error is without merit. Accordingly, we affirm.

# I.   BACKGROUND

A.  *Facts*

The relevant facts are stated in BOLI's order and are not challenged on review. Employer is a steel fabricator doing business in Oregon. In 2003, employer used a staffing company to screen prospective employees. The staffing company referred complainant to employer to fill a position as a drill press operator. Complainant was interviewed by employer's machine shop foreman and was offered the position. Complainant accepted.

Employer's policy when hiring temporary employees through the staffing company was to evaluate them after a minimum of three months. At that point, if there was enough work to justify hiring the employee on a permanent basis, the employee would be required to undergo a comprehensive drug screen at a local hospital to test for the presence of illegal drugs. In fact, during complainant's job interview, the machine shop foreman told him that, at the end of 90 days, he would be required to take a drug test before he could be hired as a permanent employee. Employer also had a written drug policy, but complainant was never shown a copy of that policy.

At the time that complainant interviewed with employer, he was participating in Oregon's medical marijuana program because of nausea, severe stomach cramps, and vomiting.[1] Complainant did not mention the fact that he possessed an OMMA card because he feared that he would not be hired. When complainant first reported for work at employer's facility, no one asked him whether he would submit to a drug test or whether he had already submitted to a drug test for the staffing company.[2]

Complainant performed satisfactorily as a drill press operator and, on two occasions, told his immediate supervisor, the shop foreman, that he liked the job and wanted to keep it. After a few weeks on the job, the supervisor gave complainant a $1.00 per hour pay raise, which was the supervisor's general practice with temporary employees.

While working for employer, complainant continued to experience nausea and severe stomach cramps. To relieve the nausea and cramps, he used marijuana one to three times per day, depending on his symptoms. Complainant never used marijuana while at work or while on employer's property, and his supervisor never suspected that complainant was using marijuana or any other drug.

Nevertheless, in March 2003, complainant told the supervisor that he needed to talk with him about his "medical problem" to see whether it would affect his chances of being hired as a regular employee. Although he did not explain his specific medical problem, complainant explained to the supervisor that he had an OMMA card, that he had tried other medications, and that marijuana worked best for him.

---

[1] The Oregon Medical Marijuana Act (OMMA), ORS 475.300 - 475.346, allows the use of marijuana, under some circumstances, to mitigate the symptoms of a debilitating medical condition. If an attending physician documents that a person has been diagnosed with a debilitating medical condition and that the medical use of marijuana will mitigate the symptoms or effects of that condition, a registry identification card may be issued to that person. ORS 475.309. After registration, a person who is engaged in the medical use of marijuana is partially exempt from the state's criminal laws proscribing marijuana possession. ORS 475.316; ORS 475.319; ORS 475.342.

[2] As part of the agreement between employer and the staffing company, all prospective employees whom the company referred to employer were to undergo a drug screening by the staffing company before beginning work at employer's facility. Complainant, however, was never asked to submit to such a test.

He showed the supervisor the documentation for his OMMA card, including the paperwork completed by a physician, and told the supervisor that he hoped that the revelation of his marijuana use would not get him fired. The supervisor told complainant that he did not know the answer and that he would talk it over with employer's owner.

The supervisor then met with employer's owner to discuss complainant's disclosure of his marijuana use and OMMA card. The supervisor explained that complainant had told him that marijuana was the only drug that he could take to alleviate his medical problem and that complainant was doing a "reasonably good job" operating the drill press. The supervisor and owner then discussed whether complainant should be hired and decided that there was no need to hire him as a regular employee.

A week after disclosing his OMMA card, complainant told the supervisor that he was planning to move to a different residence and needed to know whether employer was going to hire him as a regular employee. The supervisor told him that employer no longer needed his services.

B. *Procedural History*

In May 2003, complainant filed a complaint with BOLI's Civil Rights Division, alleging that he was the victim of unlawful employment practices. After investigating the complaint, BOLI issued formal charges against employer on the grounds that employer had (1) discharged complainant because of his disability in violation of ORS 659A.112(2)(c) and (g); and (2) failed to reasonably accommodate complainant's disability in violation of ORS 659A.112(2)(e) and (f).[3] In

---

[3] ORS 659A.112(1) provides:

"It is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because an otherwise qualified person is a person with a disability."

ORS 659A.112(2) provides, in part, that an employer violates subsection (1) of the statute if it does any of the following:

"(c) The employer utilizes standards, criteria or methods of administration that have the effect of discrimination on the basis of disability, or that perpetuate the discrimination of others who are subject to common administrative control.

"* * * * *

its answer, employer asserted a number of affirmative defenses, four of which are relevant to the issues before us:

"For its Second Affirmative Defense, Respondent alleges as follows:

"Oregon's Medical Marijuana Law does not require employers to accommodate the use of medical marijuana in the workplace or to accommodate off-duty use of medical marijuana in such a fashion that the employee would or could still be affected by such usage while on duty.

"* * * * *

"For its Third Affirmative Defense, Respondent alleges as follows:

"Respondent is not required to accommodate medical marijuana users by permitting them to work in safety-sensitive positions that would or could endanger the safety of themselves, co-workers or the public.

"* * * * *

"For its Fourth Affirmative Defense, Respondent alleges as follows:

"Respondent is free to require that employees behave in conformance with the Federal Drug-Free Workplace Act of 1988. ORS 659A.127(4). The protections of that Act do not apply to someone illegally using drugs, and marijuana is an illegal drug under Federal Law.

"* * * * *

---

"(e) The employer does not make reasonable accommodation to the known physical or mental limitations of an otherwise qualified person with a disability who is a job applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer.

"(f) The employer denies employment opportunities to a job applicant or employee who is an otherwise qualified person with a disability, if the denial is based on the need of the employer to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

"(g) The employer uses qualification standards, employment tests or other selection criteria that screen out or tend to screen out a person with a disability or a class of persons with disabilities unless the standard, test or other selection criterion, as used by the employer, is shown to be job-related for the position in question and is consistent with business necessity."

"For its Fifth Affirmative Defense, Respondent alleges as follows:

"Oregon law prescribes that ORS 659A.112 be construed to the extent possible in a manner that is consistent with any similar provisions of the Federal Americans with Disabilities Act of 1990, as amended. ORS 659A.139. That Act does not permit the use of marijuana because marijuana is an illegal drug under Federal Law."

(Paragraph numbers omitted.)

A hearing on the charges was held in late January 2005—two weeks after this court issued its decision in *Washburn v. Columbia Forest Products, Inc.*, 197 Or App 104, 104 P3d 609 (2005), a case involving disability discrimination claims by an employee who participated in Oregon's medical marijuana program. Because it affected the way in which the issues in this case were framed below and, consequently, the arguments made on review, we pause briefly to describe *Washburn*.

In *Washburn*, the plaintiff suffered from muscle spasms that, left untreated, limited his ability to sleep. He had previously treated the spasms with prescription medicine but obtained a medical marijuana card because the marijuana was a more effective treatment than prescription drugs. The use of marijuana, however, caused the plaintiff to violate his employer's workplace drug policy. 197 Or App at 106-07. After his employer discharged him as a result of his inability to comply with its drug policy, the plaintiff brought a claim against his employer alleging that it had failed to meet its obligation to reasonably accommodate his disability under ORS 659A.112(2)(e). *Id.*

In response to the complaint, the employer moved for summary judgment on the grounds that (1) the plaintiff was not a qualified individual with a disability (and therefore was not protected by Oregon disability discrimination law) and (2) the OMMA does not require employers to accommodate medical marijuana users. The trial court granted summary judgment in favor of the employer on both grounds. We reversed. *Id.* at 116-17.

Our opinion in *Washburn* touched on three discrete issues. First, we concluded that the plaintiff was, in fact, disabled—despite the fact that mitigating measures were available that rendered the limitation of his life activities less than substantial. *Id.* at 111. Second, we rejected the employer's arguments based on ORS 475.340(2), a statute in the OMMA that provides that nothing in the OMMA shall be construed to require "[a]n employer to accommodate the medical use of marijuana in any workplace." That statute, we held, was inapplicable because the plaintiff had not "used" marijuana in the workplace; rather, he simply had evidence of marijuana consumption in his bloodstream. Third, we rejected the employer's argument that the actions that it took were authorized or required by the federal Drug-Free Workplace Act of 1988, 41 USC §§ 701-07.[4] As in the case of ORS 475.340(2), because the plaintiff did not engage in any prohibited act "in the workplace," it could not be said that the plaintiff "violated (or caused [his employer] to violate) the Federal Drug-Free Workplace Act." *Washburn*, 197 Or App at 115. Moreover, we explained that the federal Drug-Free Workplace Act only prohibited acts that were "unlawful," and the medical use of marijuana was not "unlawful" under Oregon law. *Id.* Accordingly, we reversed the trial court's grant of summary judgment and remanded the case to the trial court. *Id.* at 117.

As noted above, the contested case hearing in this case took place shortly after we issued our opinion in *Washburn*. At the beginning of the contested case hearing, the administrative law judge (ALJ) and the parties engaged in a colloquy regarding the effect of that decision on employer's defenses:

"[ALJ]: Yeah. Let's talk about those affirmative defenses. * * * [I]t wasn't clear to me whether or not you were actually waiving or withdrawing the other affirmative defenses or simply just stating that you thought that they probably—you weren't going to give them a lot of energy. I—

---

[4] ORS 659A.127(4) provides that the disability discrimination statutes do not affect the ability of an employer to "require that employees behave in conformance with the requirements established under the federal Drug-Free Workplace Act of 1988."

"[Employer's counsel]: They're foreclosed by the *Washburn* decision.

"[ALJ]: Okay.

"[Employer's counsel]: I conceded that. *And that's the second, third, fourth and fifth affirmative defenses. I'm not withdrawing them because I need them to be part of my record, but I'm not going to present evidence in support of them.*

"[ALJ]: Okay.

"[Employer's counsel]: And they're primarily legal issues, in any event. But because of the *Washburn* decision, that's really eliminated those for consideration.

"[ALJ]: Okay.

"[BOLI's representative]: Because they weren't being brought forth at the hearing, I didn't prepare anything on them as well."

(Emphasis added.)

Believing that those four affirmative defenses were foreclosed by *Washburn*, employer directed its evidence and arguments at the hearing to the theory that complainant was fired because he lied about his drug use and later refused to take a drug test. In March 2005, the ALJ issued a proposed order that rejected that theory and concluded that employer had failed to reasonably accommodate complainant's disability. With respect to the second, third, fourth, and fifth affirmative defenses, the ALJ stated that the "four affirmative defenses * * * have been rendered moot by the Oregon Court of Appeals' decision in [*Washburn*]."

In April 2005, employer filed exceptions to the proposed order. Employer stated, in part, that it

"excepts to the finding that four affirmative defenses raised by it were rendered 'moot' by the *Washburn* decision. The defenses are not moot because the *Washburn* case is still in the courts; rather [employer] simply conceded that *Washburn*, as it stood at the time of hearing, would result in those affirmative defenses being denied as a matter of law."

(Record citations omitted.) Two months later, and before the agency issued a final order, employer filed a document entitled "supplemental exceptions and motion to reopen contested case record." That filing provided:

"Respondent excepts to the award in favor of [complainant] and excepts to the finding that [c]omplainant's use of marijuana was legal.

"Respondent further moves, pursuant to OAR 839-050-0410, that the forum reopen the record to consider the case of *Gonzales v. Raich,* [545 US 1, 125 S Ct 2195, 162 L Ed 2d 1 (2005)], decided June 6, 2005. In that case the United States Supreme Court held, in a 6-3 decision, that the states may not authorize the use of marijuana for medicinal purposes, and that the drug remains illegal by virtue of federal law. The impact of this decision is that [employer] should prevail on its Fourth and Fifth Affirmative Defenses."

BOLI, however, opposed the supplemental exceptions and motion to reopen the contested case record. With respect to the exceptions, BOLI argued that they were untimely under OAR 839-050-0380(4), which requires that exceptions be filed within 10 days of the date of the proposed order. BOLI contended that employer had not shown good cause to reopen the record because "the real issues in the case were whether or not [employer] engaged in the interactive process with [c]omplainant and whether or not [employer] made reasonable accommodations for [c]omplainant's anxiety and depression."

BOLI further argued:

"[Employer] has the burden of proving its affirmative defenses, but failed to do so. The time for proving those affirmative defenses was at the hearing yet [employer] specifically chose not to present any evidence on its defenses other than its first and sixth affirmative defense, thereby effectively waiving the remaining defenses. Assuming for the sake of argument that the forum were to allow [employer's] motion, there simply was no evidence presented whatsoever that the [c]omplainant engaged in the use of marijuana while on the job. [Employer] never required [c]omplainant to take a drug test, even after

[c]omplainant told [employer] of his disability and off-duty use of medical marijuana.

"Had the ALJ's decision been based on a failure to accommodate the use of medical marijuana, the case on which [employer] now relies did not invalidate Oregon's medical marijuana law. [Employer] would need to success-fully argue at rehearing that Oregon's Medical Marijuana law is preempted by federal law. Respondent could have made that argument at hearing but deliberately chose not to do so. Respondent should have been aware of the federal case at the time of hearing, and, should have made its argu-ments then. It had the opportunity to do so but simply [chose] not to."

The ALJ agreed with BOLI that the supplemental exceptions were untimely; accordingly, it ruled that the sup-plemental exceptions would not be considered.[5] However, the ALJ ruled that he would "consider the Supreme Court's rul-ing in *Gonzales* to the extent that it is relevant to [employer's] case."

In September 2005, BOLI, through its commis-sioner, issued a final order that adhered to the proposed find-ing that employer had failed to reasonably accommodate complainant's disability. However, in response to employer's exceptions, the final order deleted any reference to the sec-ond, third, fourth, and fifth affirmative defenses being "moot." Rather, the order stated that employer had "conceded that *Washburn*, as it stood at the time of hearing, would result in these four affirmative defenses being denied as a matter of law and did not present any evidence in support of them," and that, "until such time as the [Oregon] Supreme Court reverses the Court of Appeals' decision, this forum is bound by the Court of Appeals' decision."

With respect to the United States Supreme Court's decision in *Gonzales*, the final order provided:

"In a supplemental exception, [employer] asked that the forum consider [*Gonzales*], a medical marijuana case decided after the Proposed Order was issued. [Employer] argued that [*Gonzales*] supported [its] fourth and fifth affir-mative defenses. In [*Gonzales*], the U.S. Supreme Court

---

[5] Employer does not challenge that ruling on review.

held that Congress has the authority to prohibit the wholly local cultivation of marijuana even if it was used for wholly medicinal purposes pursuant to California law. According to the Oregon Attorney General, [*Gonzales*] does not invalidate the OMMA nor require that Oregon repeal the OMMA, and does not oblige Oregon to follow the federal Controlled Substances Act, 21 USC § 801 *et seq*. Accordingly, *Gonzales* does not affect the outcome of this case."

(Footnote omitted.)

Employer then sought judicial review of the final order. In the meantime, and while review was pending in this court, the Supreme Court issued its opinion in *Washburn v. Columbia Forest Products, Inc.*, 340 Or 469, 134 P3d 161 (2006), which reversed our decision in that case.

In *Washburn*, the Supreme Court held that this court had erred in concluding that the plaintiff was "disabled" within the meaning of ORS 659A.100(1)(a). Specifically, the court held:

"[W]ith regard to the substantive provisions set out in ORS 659A.112 to ORS 659A.139, the legislature intended the definition of 'disabled person' to be construed in light of mitigating measures that counteract or ameliorate an individual's impairment. The Court of Appeals erred in concluding otherwise."

340 Or at 479. Because the plaintiff in that case was able to counteract his physical impairments with prescription medication—as opposed to marijuana—his employer had no duty to accommodate his physical limitations. *Id.* at 480. Given the court's resolution of the case at that threshold inquiry, it did not address any of the other issues that this court had decided concerning the application of the OMMA or the federal Drug-Free Workplace Act.

Although a petition for judicial review had been filed in this case, BOLI, through its commissioner, elected to withdraw and reconsider its final order in light of the Supreme Court's decision in *Washburn*. In its final order on reconsideration, BOLI adhered to the finding that complainant was "disabled" within the meaning of ORS 659A.100(1)(a), because "[c]omplainant, like the plaintiff in *Washburn*, tried

to obtain relief from his medical conditions through prescription medications and medical marijuana, but did not achieve the same result." That is, BOLI concluded that complainant remained substantially limited in a major life activity even with mitigating measures.

BOLI also considered the effect of the Supreme Court's decision in *Washburn* on the second, third, fourth, and fifth affirmative defenses. It concluded:

> "At hearing, [employer] conceded that [the Court of Appeals decision in] *Washburn*, as it stood at the time of hearing, would result in these four affirmative defenses being denied as a matter of law and did not present any evidence in support of them.
>
> "As noted earlier, the Oregon Supreme Court reversed the Court of Appeals decision on May 4, 2006. However, the court's scope of inquiry did not reach to any of these affirmative defenses. As a result, the forum does not consider them."

Accordingly, BOLI adhered to its finding that employer had failed to reasonably accommodate defendant's disability. Employer seeks judicial review of that final order on reconsideration.

## II. ANALYSIS

### A. *First Assignment of Error*

■ In its first assignment of error, employer contends that "[t]he Forum erred in finding that [employer] was obligated to reasonably accommodate Complainant's medical marijuana use." In support of that assignment of error, employer advances three separate arguments. First, employer argues that, because marijuana is a controlled substance under federal law, the federal Americans with Disabilities Act (ADA) "does not protect against current marijuana use." Thus, according to employer, "[i]f the Oregon statutory scheme is construed consistently with the federal statutory scheme then medical marijuana use is not a protected activity under Oregon's anti-discrimination laws."

Second, employer argues that ORS 659A.124 "is taken virtually verbatim from 42 USC section 12114(a); and

provides that the protections of ORS 659A.112 (with exceptions not relevant here) do not apply to any job applicant or employee who is currently engaging in the illegal use of drugs if the employer takes action based on that [conduct]." (Record citation omitted.) According to employer, because complainant "was currently engaging in the illegal use of drugs[,] [h]e is not within the protection of ORS 659A.112."

Third, employer argues that, "[a]s a constitutional matter, the [S]upremacy [C]lause of the United States Constitution, Article VI, effectively mandates these statutory interpretations." (Record citations omitted.) That is, he argues that any other interpretation of Oregon's unlawful discrimination statutes is preempted by federal law.

BOLI, in response, contends that none of those arguments was raised below and, therefore, any error is not preserved for our review. *See Marbet v. Portland Gen. Elect.*, 277 Or 447, 456, 561 P2d 154 (1977) ("The requirement that a party must have objected before the agency to errors he asserts on judicial review is one facet of the general doctrine that a party must exhaust his administrative remedies."); *Larsen v. Board of Parole*, 206 Or App 353, 366, 138 P3d 16 (2006) ("The preservation requirements established in ORAP 5.45(1) apply to petitions for review of agency action."). We agree with BOLI.

According to employer, the first assignment of error was adequately preserved because it "was raised as an affirmative defense in the Answer filed by [employer]. In addition, it was raised in [employer's] Supplemental Exceptions and Motion to Reopen Contested Case Record and Respondent's Memorandum in Support of Supplemental Exceptions for Untimeliness." (Record citations omitted.) After reviewing the portions of the record cited by employer, we conclude that none of them supports employer's contention that the first assignment of error is preserved.

As explained above, employer did, in fact, assert four affirmative defenses that addressed statutory construction questions similar to those now asserted on judicial review. Nonetheless, employer took the position below that the affirmative defenses were foreclosed by this court's decision in *Washburn* and made no argument and offered no evidence as

to those affirmative defenses. Instead, employer's counsel explained that he was asserting the affirmative defenses "to be part of my record"—that is, for purposes of challenging on review this court's decision in *Washburn*. Employer concedes as much on review when it submits that the issues that it now raises on review were not briefed below "because the Court of Appeals decision in *Washburn* held that the issues involving the OMMA and legality of medical marijuana were state law issues. * * * Briefing would have been a waste of time. The forum had no choice but to follow *Washburn*."

■ Thus, the only issues that employer raised during the contested case hearing with respect to its affirmative defenses were those issues controlled by *Washburn*. On review, however, employer does not raise those issues but instead raises new and different issues regarding the construction of Oregon's unlawful discrimination statutes— issues that, as discussed above, 220 Or App at 430, were not addressed in *Washburn*. Thus, we are not persuaded that employer's affirmative defenses preserved the issues that it now raises on review.[6]

As noted above, employer also contends that it preserved its first assignment of error in its "Supplemental Exceptions and Motion to Reopen Contested Case Record and Respondent's Memorandum in Support of Supplemental Exceptions for Untimeliness." The motion and memorandum, based on the United States Supreme Court's decision in *Raich*, contended that the OMMA was preempted by federal law.[7] However, the issue that employer raises on review, as best as we can discern, is that the "[S]upremacy [C]lause of the United States Constitution * * * effectively mandates

---

[6] To the extent that employer is arguing that the ALJ or BOLI's commissioner erred in failing to consider the statutory construction questions that employer now raises on review, any error in that regard was invited by employer's statement that *Washburn* was controlling authority. *See Teamsters Local Union #223 v. Lake County*, 208 Or App 271, 278, 145 P3d 187 (2006) (declining to review claim of error on judicial review of an order of the Employment Relations Board where petitioner was "actively instrumental" in bringing about the error).

[7] In the memorandum, employer explained that marijuana use could not be accommodated because "[i]t is not legal under state law because the Supreme Court has ruled that legalization of marijuana is preempted by federal law. This obviously invalidates Oregon's Medical Marijuana Act."

these statutory interpretations [of Oregon's unlawful discrimination statutes]." Thus, the preemption issue that employer raised below (that the OMMA is preempted) was a different preemption question from the one asserted on review (that the Supremacy Clause requires a particular construction and application of Oregon's unlawful discrimination statutes).

For the reasons stated above, none of the issues raised by employer's first assignment of error was raised below in a way that would have provided the ALJ or BOLI's commissioner with an opportunity to address those issues in the first instance. Accordingly, we will not consider those issues for the first time on review.

B. *Second Assignment of Error*

■     In its second assignment of error, employer argues that "[t]he Forum erred in denying [employer's] Motion to Dismiss/Alternative Motion to Strike upon the grounds that it was constitutionally entitled to a jury under Article I, section 20, of the Oregon Constitution." Specifically, employer argues that, because an employee can commence a civil action under ORS 659A.870 (which entitles an employer to a jury trial) or file an administrative complaint with BOLI (which does not include the right to a jury trial), the complainant can "arbitrarily select a proceeding when the statutes themselves provide no basis for making such a distinction." Thus, employer argues that it is "a member of a group that is denied a jury trial and asserts that there is no rational foundation for that in light of the state's purpose."

■     Article I, section 20, of the Oregon Constitution provides that "[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." Article I, section 20, affects only laws that regulate on the basis of a "true class" rather than a classification made by the law alone. *See Hale v. Port of Portland*, 308 Or 508, 525, 783 P2d 506 (1989) (a "true class" is one whose members have in common some "antecedent personal or social characteristics or societal status"); *see also MacPherson v. DAS*, 340 Or 117, 129, 130 P3d 308 (2006) ("[T]his court consistently has held

that the protection that Article I, section 20, affords is available to only those individuals or groups whom the law classifies according to characteristics that exist apart from the enactment that they challenge."). Assuming that employer is a "citizen" under Article I, section 20, employer does not explain, and we do not understand, how it is a member of a "true class" that has been denied equal privileges. For that reason, we reject employer's second assignment of error.

Affirmed.